Niles **CROWE and Daniel Colvin, Jr., on behalf of themselves and all others similarly situated, Appellants,**

v.

William D. **LEEKE, Director, Department of Corrections, et al., Appellees.**

No. 75–1921.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1976.

Decided Feb. 8, 1977.

---

James W. Corley, Columbia, S. C., for appellants.

Emmet H. Clair, Asst. Atty. Gen. of S. C., Columbia, S. C. (Daniel R. McLeod, Atty. Gen., of S. C. and Stephen T. Savitz, Asst. Atty. Gen. of S. C., Columbia, S. C., on brief), for appellees.

Before CRAVEN and RUSSELL, Circuit Judges, and MERHIGE, District Judge.*

CRAVEN, Circuit Judge:

Inmates of the South Carolina Central Correctional Institute (hereinafter "Central") brought this action pursuant to 42 U.S.C. § 1983 challenging the constitutionality of prison mail procedures which allow correspondence from attorneys to be opened and inspected outside the presence of the inmate-addressee. The district court dismissed this claim on the ground that a prior suit upholding the constitutionality of the Department of Corrections' mail regulations was binding on plaintiffs under the doctrine of res judicata. We reverse and remand for further proceedings.

## I.

Plaintiff Niles Crowe is serving a life sentence at Central, and plaintiff Daniel

---

* Sitting by designation.

Colvin, a fellow inmate, is serving consecutive sentences of 18 and six years. On behalf of themselves and all other persons similarly situated,[1] they brought this action against the Director of the South Carolina Department of Corrections and Central's warden and postmaster, seeking declaratory and injunctive relief, as well as compensatory and punitive damages. They alleged that the opening and inspection of incoming attorney mail outside the inmate-addressee's presence violated their First, Sixth and Fourteenth Amendment rights.[2]

The mail regulations in question are included in the *Inmate Guide, Revised 1972*, a booklet prepared by the Department of Corrections and distributed to Central's inmates. The provision governing mail from attorneys [3] states that correspondence of this type will be subject to inspection, which under the regulations means that the "mail will be opened and searched for contraband, but will not be read." App. at 14.

These regulations were the subject of an earlier lawsuit, *Hamilton v. South Carolina Department of Corrections*, CA No. 72-273 (D.S.C., filed Feb. 27, 1974). That suit, certified as a class action, challenged the Department of Corrections' regulations governing grooming, mail, and solitary confinement. With regard to the mail procedures, the district court held that "the mail regulations in 1971 and now are Constitutional and not in violation of plaintiffs' civil rights." Appellants in the present suit concede that they "were unquestionably members of the class which was represented" in *Hamilton*. Brief at 4.

In response to plaintiffs' motion for an order convening a three-judge court, the court below dismissed their constitutional claim on the ground that it was barred by the *Hamilton* decision. He further concluded that the Supreme Court's decision in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974),[4] did not overrule or erode *Hamilton*. On appeal plaintiffs argue that their action is not barred by the principle of res judicata and urge this court to remand to the district court for consideration on the merits.

## II.

■ The principle of res judicata, although not wholly applicable in habeas corpus proceedings, is fully applicable in prisoners' civil rights suits brought under § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 497, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The Supreme Court has explained res judicata as follows:

> The general rule of res judicata applies to repetitious suits involving the *same cause of action*. . . . The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

---

1. The district court did not certify this suit as a class action.

2. Plaintiffs also alleged that their legal mail was being censored and that their mailing privileges were unduly restricted to only five days per week. The district court dismissed these claims. In this appeal plaintiffs pursue only their claim regarding their right to be present when their incoming attorney mail is opened.

3. Categories of Correspondence
   a) Unrestricted
   1. You will be permitted to write to members of this group without restriction as to frequency and length of letters.
   2. Mail to members of this group will be immune from both censorship and inspec-

tion. Mail from members of this group will be subject to inspection only. The following groups and persons are approved for the unrestricted correspondence class:
a) Officers of Federal, State and local Courts —(attorneys, clerks, and judges);

. . . . . .

4. In *Wolff* the Supreme Court approved prison regulations requiring incoming mail identified as being from an attorney to be opened and searched in the presence of the prisoner. The Court noted that this regulation was "all, *and perhaps even more*, than the Constitution requires." 418 U.S. at 577, 94 S.Ct. at 2985 (emphasis added).

*Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948) (emphasis added).

Whether res judicata is applicable in the present suit therefore depends on whether this suit involves the same cause of action as was involved in *Hamilton.* There is no mechanical test that can be applied in answering this question. However, the Supreme Court's resolution of this issue in analogous cases does provide some guidance.

In *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955), the district court dismissed plaintiffs' private antitrust suit on the ground that it was barred by a consent judgment entered into by the same parties seven years earlier. The district court and the Third Circuit concluded that the earlier judgment was res judicata. The Supreme Court reversed. Writing for the Court, Chief Justice Warren stated that although both suits involved " 'essentially the same course of wrongful conduct,' " this course of conduct gave rise to more than one cause of action. *Id.* at 327–28, 75 S.Ct. at 868. He further explained:

> While the 1943 judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case. . . .
> Under these circumstances, whether the defendants' conduct be regarded as a series of individual torts or as one continuing tort, the 1943 judgment does not constitute a bar to the instant suit.

*Id.* at 328, 75 S.Ct. at 868.

Similarly, with regard to tax litigation, the Supreme Court has concluded that each tax year gives rise to a new cause of action. Therefore, "a judgment on the merits is res judicata as to any subsequent proceeding involving the same claim and the same tax year." *Commissioner v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). But as to later proceedings involving similar or identical claims relating to different tax years, the earlier judgment is not res judicata.

We glean from these cases that res judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action. However, this does not mean that the parties are free to keep coming into court and litigating the same issues over and over. As we discuss below, even where different causes of action are involved, the principle of collateral estoppel may apply.

■ We therefore conclude that the *Hamilton* judgment does not bar the present action under the principle of res judicata. Although that judgment precludes plaintiffs from relitigating the constitutionality of defendants' acts occurring before February 27, 1974, res judicata does not prevent them from challenging acts occurring after the *Hamilton* judgment was entered.

As we noted above, however, plaintiffs still might be precluded from pursuing their claim by the principle of collateral estoppel. Although often confused with res judicata, collateral estoppel is a rule of different applicability and effect. The Supreme Court has explained the distinction:

> But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." . . . [T]he parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time.

*Sunnen,* 333 U.S. at 598, 68 S.Ct. at 719. Although the Court in the above discussion referred to the principle being discussed as res judicata, it went on to say that "[i]n this sense, res judicata is usually and more accu-

rately referred to as estoppel by judgment, or collateral estoppel."

■ Our review of the *Hamilton* judgment convinces us that the precise issue sought to be litigated here, whether prison officials can open mail from lawyers *outside of the inmate-addressee's presence*, was not raised and adjudicated in that suit. At page 16 of Judge Martin's opinion in *Hamilton*, App. at 37, the court gives its attention "to the allegation that opening, inspecting and censoring letters and packages violates the Constitution." Judge Martin noted that "unrestricted" mail (from lawyers, court officials, etc.) was subject to inspection only without censorship. He viewed such inspection to prevent the introduction of contraband into the prison as reasonable. But nowhere in his exhaustive and careful study of the problem does he reach the question of whether inspection of mail coming from lawyers might feasibly be accomplished in the presence of the addressee inmate, or whether doing so is necessary to protect the Sixth Amendment right to counsel. We therefore conclude that plaintiffs are not barred by either res judicata or collateral estoppel from now litigating that issue.

### III.

■ The district court having erroneously dismissed plaintiffs' constitutional claim, we remand for proceedings on the merits. In doing so, we express our belief that the State has a compelling interest in assuring the security of its prisons and that whenever that need conflicts with the rights of prisoners the latter must yield. But that is not to say that administrators of penitentiaries may unnecessarily infringe upon the Sixth Amendment right to counsel of inmates. Several other circuits have viewed favorably the claims of prisoners similar to the ones raised here. The First Circuit, in *Smith v. Robbins*, 454 F.2d 696 (1972), affirmed the district court's order requiring attorney mail to be opened in the presence of the prisoner. It reached this result primarily out of concern that the opening of such mail outside the prisoner's presence

might suggest to him that a prison official was reading this correspondence. The court worried that "the resulting fear may chill communications between the prisoner and his counsel." *Id.* at 697. Rejecting the justifications for the procedure raised by prison authorities, the First Circuit concluded that there was "no reason to leave such possible apprehensions on such an important matter as right to counsel in the minds of the prisoner or his attorney."

The Fifth Circuit has recently reached a similar conclusion. In *Taylor v. Sterrett*, 532 F.2d 462 (1976), the court relied on the inmates' right of access to the courts in affirming "that portion of the district court's order requiring that incoming prisoner mail from courts, attorneys, prosecuting attorneys, and probation or parole officers be opened only in the presence of the inmate." *Id.* at 475. The court noted that although most of the inmates' fears of abuses by jail officials were unfounded, "the inhibitory effect of a jail official's access to information contained in the correspondence may diminish an inmate's lawful access to the courts." *Id.* at 476. Of like effect are *Bach v. Illinois*, 504 F.2d 1100 (7th Cir.), *cert. denied*, 418 U.S. 910, 94 S.Ct. 3202, 41 L.Ed.2d 1156 (1974), and *Moore v. Ciccone*, 459 F.2d 574 (8th Cir. 1972) (concurring opinion).

We note that in several of the above cases the prison officials admittedly had been engaging in a practice of *reading* incoming mail from attorneys. *See, e. g., Taylor v. Sterrett, supra*, and *Smith v. Robbins, supra*. In such a context it is not unreasonable for inmates to fear that prison officials will continue their practice of reading the incoming attorney mail if they are allowed to open it outside the inmates' presence. In the present case, however, Central's postmaster, Donald Brazell, has submitted an affidavit stating that there is no censorship of incoming mail at Central and that letters are only inspected for contraband. App. at 11.

Upon remand, the district court should conduct an evidentiary hearing and find facts with respect to the following: (1) the

present practice of opening attorney mail addressed to inmates, with particular reference to whether letters are read and whether copies are made for subsequent examination; (2) whether such correspondence is handled at a place and in such a manner that it is subject to observation by others; (3) what basis, if any, there is for inmate apprehension that their correspondence from attorneys is being read; (4) whether it is reasonably practicable for the warden to permit any form of random observation of the opening procedure to quiet fears that information is being gleaned from such correspondence; and (5) whether the search for contraband can be accomplished in a less intrusive manner by use of electronic or photographic equipment or even by examination of configuration and thickness of envelopes. After resolving factual questions such as these and others that may occur to counsel or to the court, the district judge should then determine whether or not it is reasonably necessary in order to protect the inmates' Sixth Amendment right to counsel to alter the present practice of handling incoming mail from attorneys to assure that contraband is not introduced into the prison.[5]

Our recitation of the decisions of other circuits is for the guidance of the district judge. Difficult questions such as this one cannot be decided rationally in a vacuum. The correct decision will depend upon the facts and the feasible alternatives, and we therefore express no opinion as to what, if anything, ought to be done by way of reconciling the right to counsel with the right of the State to assure the internal security of the institution.

REVERSED AND REMANDED.

5. Because the question is not briefed, we do not decide whether the convening of a three-judge court will be necessary. But we hold that a single district judge can conduct the evidentiary hearing, and thereafter decide whether he should request the convening of a three-judge court depending upon his interpretation of the recent act repealing 28 U.S.C. § 2281 and his view of the merits.