Garcia Jay WRIGHT, Appellant,

v.

George COLLINS, Warden, Maryland Penitentiary; Dr. Berry; Officer Larry Donnell, Appellees.

No. 84–6001.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1984.

Decided Jan. 7, 1985.

Peter J. McNamara, Baltimore, Md. (Robert L. Ehrlich, Baltimore, Md., on brief), for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore, Md. (Stephen Sachs, Atty. Gen. of Maryland, Baltimore, Md., on brief), for appellees.

Before MURNAGHAN and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

ERVIN, Circuit Judge:

Appellant Garcia Jay Wright is an inmate at Maryland Penitentiary. He brought this action under 42 U.S.C. § 1983 against the warden, a correctional officer, and the chief medical officer of Maryland Penitentiary. Wright alleges that a variety of actions by these prison officials violated his constitutional rights. The district court referred the case to a magistrate who recommended that a motion by appellees for summary judgment be granted. The district court granted Wright an extension of time to file objections to the magistrate's report. No objections were filed. The district court adopted the magistrate's recommendations and denied a subsequent request by Wright for an additional extension of time to file objections. Wright then moved to amend his complaint and to vacate the district court's judgment. Both motions were denied. Wright now appeals from the grant of summary judgment.

On this appeal we must decide, first, whether Wright has waived his right of appeal due to his failure to file objections to the magistrate's report under 28 U.S.C. § 636(b)(1). If Wright's appeal has not been waived, we must consider (1) whether *res judicata* bars consideration of his challenge to the constitutionality of prison conditions due to the previous judgment involving conditions at Maryland Penitentiary in *Nelson v. Collins,* 455 F.Supp. 727 (D.Md.1978), *aff'd in part and remanded sub nom. Johnson v. Levine,* 588 F.2d 1378 (4th Cir.1978); *vacated in part and remanded, Nelson v. Collins,* 659 F.2d 420 (4th Cir.1981); and (2) whether the district court erred in granting summary judgment to the defendants. We affirm in part and reverse in part and remand the case for further proceedings.

## I.

This case arises from three separate incidents. First, on October 24, 1980, Wright was ordered by Correctional Officer Larry Donnell to remove garbage from a sixteen-foot deep prison "moat" using a twelve-foot ladder. While executing this task, Wright fell from the top step of the ladder onto his back, sustaining soft tissue injuries but no fractures. Wright contends that the task Donnell ordered him to perform was dangerous because of the size of the ladder and that Donnell knew that the ladder was unsafe. Consequently, Wright alleges that by ordering him to perform this task, Donnell violated his eighth amendment rights.

Wright's claims against the head of the prison medical staff, Dr. Wayne S. Barry, concern the medical treatment he received for the injuries sustained in his fall. After the accident, Wright was taken by ambulance to the University of Maryland Hospital for treatment. He was transferred later the same day to the prison clinic and was discharged after three days. Wright alleges that he received inadequate medical treatment while at the clinic, and that he was discharged prematurely by appellee Barry before he had recovered sufficiently from his injuries. According to Wright, on October 29, 1980, two days after his discharge from the clinic, he received some medical attention, physical therapy and a neck brace and was placed on bed rest until November 24, 1980. On November 24, Wright's medical treatment was discontinued and he was ordered to return to work. Wright alleges that he was denied medical attention from November 24, 1980 until December 24, 1980, when he was given a back brace. Wright also claims that he was required to continue working with a

neck and back brace even though he was disabled and unable to work. Appellee Barry stated, however, that Wright received "a great deal of medical attention ... for an injury which never resulted in any significant bodily damage, physical impairment, or disease." (App. 24).

Finally, Wright's third set of claims involve his sentence of segregation for sixty days due to alleged possession of unauthorized medication and intoxicants in April of 1981. Although Wright requested representation at his adjustment hearing, he was tried without representation, which he claims was a denial of his due process rights. The adjustment team found Wright guilty and sentenced him to segregation. Wright appealed the decision to appellee George H. Collins, the prison warden, who upheld the adjustment team decision.

Wright was then placed in segregation, and he alleges that the conditions in the segregation unit constituted cruel and unusual punishment. According to Wright, his cell was unsanitary and rodent infested. He alleges that rodents were attracted to his cell because garbage was allowed to accumulate outside of it. He claims that he was only allowed to shower once every ten days even though the sink in his cell was stopped-up. He also maintains that he was denied any opportunity to exercise and was deprived of physical therapy and medical treatment, notwithstanding his continuing back problems. He claims that, despite his back injury, he was required to sleep on a bunk without a mattress.

On June 16, 1981, Wright filed a *pro se* complaint in federal district court charging Donnell, Barry and Collins with violating his rights under the U.S. Constitution. In August of 1981, appellees filed a motion to dismiss or, in the alternative, a motion for summary judgment. The matter was referred to U.S. Magistrate Fredric M. Smalkin, and on September 30, 1983, Magistrate Smalkin issued a report recommending that summary judgment be granted. He found that Wright's claim against Donnell for the accident was one of simple negligence for which there were adequate state remedies, and consequently the claim did not come within the scope of § 1983 jurisdiction. With respect to appellee Barry, the magistrate found that Wright had not established a case of "deliberate indifference" required for § 1983 liability against physicians. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Finally, Magistrate Smalkin found that Warden Collins was not liable because Wright had not established the requisite personal involvement on Collins' part in the conditions of the segregation unit or in the sentencing process to make him personally liable under Wright's cruel and unusual punishment or due process allegations. Further, Magistrate Smalkin found that any challenge to the conditions of the segregation unit was barred by *res judicata* because Wright was a member of the plaintiff class in a case involving prison conditions at Maryland Penitentiary. *See Nelson v. Collins*, 455 F.Supp. 727 (D.Md.), *aff'd in part and remanded sub nom. Johnson v. Levine*, 588 F.2d 1378 (4th Cir. 1978), *vacated in part and remanded, Nelson v. Collins*, 659 F.2d 420 (4th Cir. 1981).

A copy of the magistrate's report was sent to Wright on September 30, 1983, with a letter indicating that any objections to the report "must be received no later than October 13, 1983." The letter did not indicate the possible consequences of a failure to object within the appropriate time period. Wright moved for an extension of time for filing objections from October 13 to November 13, which was granted by the district court. As of November 13, the court had received no objections from Wright. On November 16, 1983, the district court adopted the magistrate's report and recommendations and granted summary judgment to the defendants. Two days later the court received a motion from Wright requesting an additional extension of time. Apparently it had been sent on November 9, 1983. On November 21, 1983, the district court denied Wright's motion on the basis that his indigency, lack of legal counsel, limited access to legal mate-

rials and lack of time to contact witnesses were insufficient justifications for an additional extension. On December 15, 1983, Wright filed a motion to vacate judgment, a motion to amend his complaint and a motion to proceed in *forma pauperis,* which were denied by the district court. Wright now appeals from the grant of summary judgment against him.

### II.

The initial question in this case is whether Wright is barred from appealing the district court's judgment due to his failure to object in a timely fashion to the magistrate's report. The Federal Magistrate Act provides that after a magistrate has filed recommended findings of fact and conclusions of law under 28 U.S.C. § 636(b)(1) "any party may serve and file written objections to such proposed findings and recommendations" within ten days. After objections have been filed,

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

28 U.S.C. § 636(b)(1).

Recently this court considered whether § 636(b)(1) of the Federal Magistrate Act was intended to limit the right of a party to appeal after failing to object to a magistrate's report. *USA v. Schronce,* 727 F.2d 91 (4th Cir.1984), *cert. denied,* — U.S. ——, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). The court recognized that the purpose of the Act was to give magistrates a significant role in the federal judicial system in order to reduce district court case loads.

Neither the Act nor its legislative history specifically addressed the question of the consequences of a party's failure to object timely under § 636(b)(1). The court determined, however, that permitting appeal of a district court's order by parties who failed to object would frustrate the purposes of the Act by allowing nonobjecting parties to bypass the district courts. This result was troubling because, under the Act, the district courts have primary responsibility for supervising the functioning of magistrates within the federal judicial system. Consequently, permitting nonobjecting parties to appeal would

impose a serious incongruity on the district court's decision-making process— vesting it with the duty to decide issues based on the magistrate's findings but depriving it of the opportunity to correct those findings when the litigant has identified a possible error.

727 F.2d at 94. The court therefore concluded that Schronce had waived his right to appeal by failing to file objections to the magistrate's report.

*Schronce* established a general rule that a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings. However, the *Schronce* rule is not absolute. The court observed that

Schronce's arguments in this case would be more compelling if the posture of Schronce's appeal were caused by procedural ambush. That is not the case—the magistrate's recommendation was adequate to apprise Schronce that timely objection was necessary in order for Schronce to perfect his right of review.[1]

*Id.*

The nonobjecting party in *Schronce* was represented by counsel. In *Carr v. Hutto,* 737 F.2d 433 (4th Cir.1984), this court ap-

---

**1.** According to the court,

[t]he recommendation of the magistrate in this case concluded by stating that "written objections to the proposed findings of fact and conclusions of law and the recommendation for disposition of the motion to suppress ... must be filed within ten (10) days after service ...." This language was mandatory and clearly alerted Schronce to his procedural obligations.

727 F.2d at 94.

plied the *Schronce* rule in a situation involving a prisoner's *pro se* petition for a writ of habeas corpus. In that case the magistrate expressly notified the parties that "failure to file timely objections to the findings and recommendations set forth above may result in waiver of right to appeal from a judgment of this court based on such findings and recommendations." *Id.* at 434 n. 2. The court found this notice to be "fair warning of the possible consequences of the failure to object timely," *id.*, and held that, under *Schronce*, the prisoner's failure to object deprived him of his right of appeal. *Id.* at 434. The court reserved the question of whether a warning such as that given in *Carr* was required.

In this case, Wright received a letter along with a copy of the magistrate's report which stated that "*if you wish to file objections* as indicated in Local Rule 82 (a copy of which is enclosed), said objections must be received no later than October 13, 1983." App. 90 (emphasis added).[2] The language of this notice is clearly not mandatory. Nor does it warn of the consequences of a failure to object. Consequently the question reserved by this court in *Carr* is squarely presented in this case. We must consider whether a *pro se* litigant must receive "fair warning of the possible consequences" of a failure to object, *Carr v. Hutto*, 737 F.2d at 434 n. 2, before failure to object will result in waiver of the right of appeal.

This question is analogous to the question of whether notice must be given to *pro se* litigants regarding the requirements of the summary judgment rule, Fed.R.Civ.P. 56(e), before summary judgment may be entered against them. In *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), this court held that a *pro se* litigant must be "advised of his right to file counter-affidavits or other responsive material and alerted to the fact that his failure to so respond might result in the entry of summary judgment against him." *Id.* at 310. The court quoted with approval the decision in *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C.Cir. 1968), which stressed "the need for a form of notice sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required." 528 F.2d at 310. *See Davis v. Zahradnick*, 600 F.2d 458 (4th Cir.1979).

We find the requirement of explicit notice to *pro se* litigants in *Roseboro* to be equally compelling in this case, as in both instances failure to comply with procedural requirements results in forfeiture of important rights. We also find that a requirement that *pro se* litigants be given explicit notice of the consequences of a failure to object is consistent with the purposes of the Federal Magistrate Act outlined in *Schronce*, 727 F.2d at 94. If uncounselled litigants are notified that they must file objections to contested portions of a magistrate's report in order to preserve their right of appeal, they are more likely to object in a timely fashion, thereby enabling district courts to engage in the reviewing function Congress intended them to perform. Consequently, we hold that a *pro se* litigant must receive fair notification of the consequences of failure to object to a magistrate's report before such a procedural default will result in waiver of the right of appeal. The notice must be "sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required." *Hudson v. Hardy*, 412 F.2d at 1094. Because the *pro se* litigant in this

---

2. The entire notice stated in full:
   Gentlemen:
   A copy of the decision of the United States Magistrate is enclosed. If you wish to file objections as indicated in Local Rule 82 (a copy of which is enclosed), said objections must be received no later than October 13, 1983.
   The relevant portion of Local Rule 82 is as follows:

   (c) In cases referred pursuant to 28 USC § 636(B) and Local Rule 80.3.a–c, a magistrate's decision or report and recommendation will be reviewed by a District Judge as provided in Federal Rule of Civil Procedure 72. The memoranda called for in subsection (a) above will not be submitted, unless requested by the Court.

case received no notice of the consequences of a failure to object to the magistrate's report, we hold that his failure to object will not operate to bar his appeal.[3]

### III.

Before considering the merits of Wright's § 1983 action, we must determine whether his allegation of unconstitutional conditions in the segregation unit is barred by *res judicata* due to prior litigation involving conditions at Maryland Penitentiary. *See Nelson v. Collins*, 455 F.Supp. 727 (D.Md.), *aff'd in part and remanded sub. nom. Johnson v. Levine*, 588 F.2d 1378 (4th Cir.1978), *vacated in part and remanded, Nelson v. Collins*, 659 F.2d 420 (4th Cir.1981). *Nelson* was brought as a class action seeking declaratory and injunctive relief and money damages.[4] Wright was a member of the class which included all prisoners at Maryland Penitentiary. The central issue before the court in that case was whether overcrowding at Maryland Penitentiary and the Maryland Reception, Diagnostic and Classification Center constituted cruel and unusual punishment.[5] The district court and the Fourth Circuit ruled that it did. 455 F.Supp. at 734; 588

F.2d at 1380–81. The plaintiffs had presented a "catalog" of other complaints to the district court, suggesting that "the plaintiffs ha[d] seized on the occasion of this suit to attempt to seek relief from virtually all conditions ... which they find burdensome." 455 F.Supp. at 735. However, the district court only found constitutional violations with respect to double-celling and failure to provide medical treatment to prisoners placed in isolation due to mental illness. *Id.* at 734–35.[6]

While Wright challenges conditions that may have been part of the plaintiffs' "catalog" of complaints, he seeks compensatory and punitive damages for the personal harm he suffered. "[B]efore a class member may be barred from pursuing an individual claim for damages, he must have been notified that he was required to adjudicate his damage claims as part of a prior class action suit." *Crowder v. Lash*, 687 F.2d 996, 1008 (7th Cir.1982). *See also Norris v. Slothouber*, 718 F.2d 1116, 1117 (D.C.Cir.1983); *Penson v. Terminal Transport Co.*, 634 F.2d 989, 995 (5th Cir.1981); *Johnson v. General Motors Corp.*, 598 F.2d 432, 437 (5th Cir.1979); *Bogard v.*

---

**3.** Other courts have considered the question of adequate notice of the requirements of 28 U.S.C. § 636(b)(1) in cases involving litigants who were represented by counsel. In *United States v. Walters*, 638 F.2d 947, 950 (6th Cir.1981), the Sixth Circuit required that "a party shall be informed by the magistrate that objections must be filed within ten days or further appeal is waived." The waiver rule was applied prospectively in *Walters*, so that the failure of the United States to object did not bar its appeal in that case. In *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (en banc) (Unit B), the Fifth Circuit also required explicit notice, suggesting the following specific language:

> Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal.

*Id.* at 408.

The one circuit that has ruled that failure to object to a magistrate's report does not constitute waiver of the right of appeal has rested in part on its belief that

> In a civilized system of justice, the norm should be to decide claims on their merits, and the mere inaction of a party or his lawyer

should not result in the loss of a hypothetically meritorious claim, except in those limited instances, see *e.g.*, Fed.R.Civ.P. 37, where clear notice is given in advance that a certain procedural default will or might result in loss of a claim or defense.

*Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1205–6 (8th Cir.1983) (*quoting Johnson v. Boyd-Richardson Co.*, 650 F.2d 147, 149 (8th Cir. 1981)).

**4.** Although monetary relief was sought in *Nelson, see* 455 F.Supp. at 728 n. 3, there is no indication in the record that it has been or ever will be granted.

**5.** *Nelson v. Collins* has since been consolidated with two other cases involving other penal institutions in Maryland. *Nelson v. Collins*, 659 F.2d 420 (4th Cir.1981). *See Johnson v. Levine*, 450 F.Supp. 648 (D.Md.1978); *Washington v. Keller*, 479 F.Supp. 569 (D.Md.1979).

**6.** The finding that failure to provide medical treatment violated the rights of prisoners placed in isolation due to mental illness was reversed by the Fourth Circuit on appeal. 588 F.2d at 1381.

*Cook,* 586 F.2d 399, 408 (5th Cir.1978), *cert. denied,* 444 U.S. 883, 100 S.Ct. 173, 62 L.Ed.2d 113 (1979). The class notice in this case was simply a general notice informing class members of the existence of the litigation and the questions raised by it. The notice did not specify the forms of relief sought. It did not notify class members of the effect of class membership. It simply stated that "[a]ny prisoner in the Maryland Penitentiary or MRDCC who desires to confer with counsel for the named plaintiffs about any of the issues in this case, may contact them at the below address."[7] Because Wright was not notified that participation in the class action would preclude a subsequent individual damage action, his participation in the *Nelson* class will not bar this individual litigation.[8]

The Fifth Circuit reached a similar result in *Bogard v. Cook.* In that case a prisoner sought damages for injuries that occurred prior to a class action suit and testimony regarding the injurious acts by prison officials was presented at trial in the class action. Nevertheless, the Fifth Circuit concluded that the inmates involved in the class litigation "could not have surmised from the class action notice sent to them in *Gates v. Collier,* 349 F.Supp. 881 (N.D. Miss.1972), *aff'd* 501 F.2d 1291 (5th Cir. 1974), that they were required to seek monetary relief in that suit or opt out." 586 F.2d at 408. While the court found that the notice in *Gates* was adequate to inform the inmates of their rights in seeking "equitable reform" of the prison, "it was insufficient to alert prisoners to the possibility that they could seek individual money damages for personal wrongs." *Id.* Consequently, the court ruled that it would be "a harsh and improper application of *res judicata* to hold, on the basis of the notice sent out in [the previous class action suit], that prisoners forfeited their rights to personal redress for lack of knowledge that federal law . . . required that injunctive and monetary relief be sought in one action." *Id.* at 408–09.

The fact that class representatives file a complaint asking for everything but the proverbial kitchen sink should not mean that all future litigation involving harm to individual prisoners will be precluded. Further, as the Seventh Circuit noted in *Crowder v. Lash,* it would be unacceptable

> to require an inmate to elect between joining an ongoing class suit and thereby forfeiting his right to seek individual damages, on the one hand, and removing himself from the class (and hence risking exclusion from any equitable relief granted) in order to preserve the possibility of bringing a subsequent damage action, on the other.

687 F.2d at 1009. *See also Cooper v. Federal Reserve Bank of Richmond,* —— U.S. ——, 104 S.Ct. 2794, 2802–03, 81 L.Ed.2d 718 (1984) (judgment in a class action determining that an employer did not engage in a pattern or practice of race discrimination will not bar class members from maintaining individual claims of employment discrimination).[9]

---

**7.** We do not intend to infer that the notice in *Nelson* was not adequate for the purposes of that lawsuit. The *Nelson* class was certified pursuant to Fed.R.Civ.P. 23(b)(2), and consequently notice was within the district court's discretion under Fed.R.Civ.P. 23(d)(2).

**8.** Consistent with *Roseboro* and *Hudson,* notice to prisoners of the effect of membership in a class must be "sufficiently understandable to one in appellant's circumstances fairly to apprise him" of the consequence of class membership. 528 F.2d at 310; 412 F.2d at 1094.

**9.** An alternate ground for our holding that this action is not barred by *res judicata* is provided by *Crowe v. Leeke,* 550 F.2d 184 (4th Cir.1977).

In that case, this court permitted a class action suit challenging prison mail regulations even though class members had been parties to a previous class action in which the same regulations were upheld. The court found that *"res judicata* has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action." *Id.* at 187. Further, under the doctrine of collateral estoppel, previous consideration of the constitutionality of the mail regulations did not bar a later challenge to the regulations because the specific issue of "whether prison officials can open mail from lawyers *outside of the inmate addressee's presence* was not raised and adjudicated in that suit." 550 F.2d at 188 (emphasis in original). The previous suit

In addition, a rule precluding litigants from bringing separate damage actions would have a negative effect on the already burdensome litigation in *Nelson.* It would require every Maryland prisoner with a § 1983 claim to intervene in the class action suit in order to have his case heard. This would raise serious questions as to the adequacy of representation of individual claims by class representatives who are necessarily concerned with broader questions. It would also result in unmanageable class action litigation. We do not believe *res judicata* compels such a result. *See Crowder v. Lash,* 687 F.2d at 1008; *Bogard v. Cook,* 586 F.2d at 409. *Cf. Heckart v. Pate,* 52 F.R.D. 224, 229 (N.D.Ill.1971) (denying class certification in prisoner § 1983 suit seeking injunctive and monetary relief in part because the court foresaw "enormous difficulties" in managing suit as a class action). Accordingly, we hold that *res judicata* will not bar consideration of the merits of Wright's unconstitutional conditions claim.

## IV.

■ In turning to the merits of Wright's case, we note that Wright cannot succeed merely by showing any deprivation of his rights in this § 1983 action. Section 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law. *Tucker v. Duncan,* 499 F.2d 963, 965 n. 1 (4th Cir.1974).

■ With respect to his claim against Officer Donnell, Wright asserts that he was forced to perform a job which Donnell knew was dangerous and nonetheless compelled him to perform. Infliction of harm by prison authorities can constitute a claim under § 1983. *King v. Blankenship,* 636 F.2d 70, 72–73 (4th Cir.1980). However, the facts of this case do not rise to the level of a constitutional violation. At most, Donnell's order that Wright use an allegedly

unsafe ladder was negligence, for which there are adequate remedies under state law. One available remedy is Workers' Compensation, for which Wright applied. Therefore, the district court's grant of summary judgment in favor of Donnell was proper.

■ Wright contends that Dr. Barry did not provide him with adequate medical care to treat the injuries he sustained as a result of his fall. Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged. *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir.1970). Here Dr. Barry and others provided Wright with medical treatment on numerous occasions. Wright's allegation that his medical care was inadequate would, at most, constitute a claim of medical malpractice. He alleges no exceptional circumstances which meet the standard of deliberate indifference to serious medical needs required for § 1983 liability. Consequently the order of summary judgment in favor of Barry is affirmed.

Wright alleges that Warden Collins was responsible for a deprivation of his constitutional rights in two different respects. First, he alleges that he was denied a representative at his adjustment hearing in violation of his due process rights. Second, he claims that the conditions in the segregation unit constituted cruel and unusual punishment in violation of the eighth amendment. Magistrate Smalkin found insufficient personal involvement on Collins' part to justify liability under § 1983 for either claim.

only raised the question of whether mail from lawyers could be opened by prison officials.
*Crowe* provides further support for the holding in this case as Wright's claims arise from

actions which occurred after judgment was entered in *Nelson.*

In order for an individual to be liable under § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977) (*quoting Bennett v. Gravelle,* 323 F.Supp. 203, 214 (D.Md.1971), *aff'd* 451 F.2d 1011 (4th Cir.1971)). Consequently, Collins must have had personal knowledge of and involvement in the alleged deprivation of appellant's rights in order to be liable.

Collins was not present at the adjustment team hearing and was not involved in the conduct of the hearing. His sole involvement was to review the merits of Wright's assignment to segregation. Wright wrote Collins a letter challenging the findings of the adjustment team, complaining that he was denied counsel and protesting the conditions in the segregation unit. Receipt of letters by prison officials may be evidence of personal knowledge of unconstitutional conditions. *Wright v. McMann,* 460 F.2d 126, 134 (2d Cir.1972), *cert. denied,* 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972). However, Wright's letter to Collins does not establish personal involvement in the adjustment hearing, but rather a notification of alleged harm done by others. Such notice can only facilitate personal involvement in a deprivation of rights where the harm continues over a period of time. Consequently, Collins could only be personally liable for the conduct of the adjustment hearing under a theory of *respondeat superior.* He was therefore not sufficiently personally involved in the hearing process to be liable under § 1983 for any procedural defects. Summary judgment was therefore appropriately granted in favor of Collins on the question of due process.

Summary judgment was not appropriate on the question of Collins' liability for conditions in the segregation unit as material facts remain in dispute. Wright asserts that sufficient personal involvement in prison conditions was present in part because he sent Collins a letter alerting him to conditions in the unit while he remained incarcerated there. Consequently, as compared with notification of a previous denial of due process rights, the notice regarding conditions was notification of a continuing problem which may have been within Collins' power to remedy. In addition, as Warden of Maryland Penitentiary, Collins presumably has broad authority over the prison. It is conceivable that, if Wright is permitted to press his claim on the merits, he may be able to show sufficient personal involvement stemming either from Collins' duties as Warden or from his receipt of notification from Wright to establish a basis for § 1983 liability. If so, the facts Wright alleges regarding the conditions in the segregation unit may be sufficient to establish a violation of his eighth amendment rights. Consequently, we reverse the district court's grant of summary judgment in favor of Collins on this point.

Accordingly, the judgment of the district court is affirmed in part and reversed in part and the case is remanded to the district court for proceedings not inconsistent with this opinion.

AFFIRMED IN PART REVERSED IN PART, AND REMANDED.