**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DOROTHY C. BYRD,
Plaintiff-Appellant,

v.

KENNETH S. APFEL, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

No. 98-1781

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Richard C. Erwin, Senior District Judge.
(CA-96-730-2)

Submitted: December 8, 1998

Decided: December 31, 1998

Before MURNAGHAN, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Tomi W. Bryan, Lisa W. Bullard, BRYAN, BULLARD & HOU-
GLAN, P.C., Greensboro, North Carolina, for Appellant. Frank W.
Hunger, Assistant Attorney General, Walter C. Holton, Jr., United
States Attorney, Mary Ann Sloan, Chief Counsel, Region IV, Dennis
R. Williams, Deputy Chief Counsel, Region IV, Ronald Lamar Pax-
ton, Assistant Regional Counsel, Office of the General Counsel,
SOCIAL SECURITY ADMINISTRATION, Atlanta, Georgia, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dorothy Byrd appeals from the district court's order accepting the magistrate judge's report and recommendation, granting the Commissioner's motion for judgment on the pleadings and denying Byrd's motion for judgment reversing the Commissioner's decision denying social security disability benefits. On appeal, Byrd alleges that the Administrative Law Judge (ALJ) erred at steps two, three, and five of the sequential analysis, that the ALJ failed to afford controlling weight to the opinion of her treating physician, that the ALJ erred by not completing a psychiatric review technique form (PRTF), that the testimony of the Vocational Expert (VE) was not supported by substantial evidence, and that the ALJ erred in finding that Byrd's subjective complaints of pain were not credible. Finding no error, we affirm.

Byrd was fifty years old at the time of her alleged onset of disability on October 20, 1993. She has a high school education and her past relevant work was as a computer equipment operator and dye cutter for a printing company. She filed an application for disability insurance benefits on November 2, 1993. She alleged disability due to pain in her back, right hip, hands, and shoulders, as well as a thyroid disorder, diabetes, cataracts and a stomach condition. The ALJ found that Byrd had a severe combination of arthritis in the right hip, shoulder bursitis, spinal spondylosis, slight hand arthritis, and obesity, but that she did not have an impairment or combination of impairments listed in or medically equal to one in the Listings of Impairments.[1] He found that Byrd's allegations of pain were exaggerated and not credible to the extent alleged. He also found that Byrd could no longer perform her past relevant work as a dye cutter, but that she had the residual functional capacity to perform the full range of light work, as limited by some restrictions. The ALJ found Byrd's physical exertion limita-

_____

[1] See 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1997).

2

tions to be: lifting no more than twenty pounds at a time, ten pounds frequently, and sitting, standing, and walking no more than two hours at a time for a total of four hours each, reaching overhead, and no more manual exertion than is required by a fairly good ability to grip. Finally, the ALJ found that Byrd could perform a significant number of jobs in the national economy. The ALJ therefore concluded that Byrd was not disabled within the meaning of the law to receive disability benefits. Byrd requested review of the ALJ's decision by the Appeals Council, which denied her request for review.

Byrd filed a complaint in the district court challenging the final decision of the Commissioner. The parties filed cross motions for judgment. The district court denied Byrd's motion and granted the Commissioner's motion, and affirmed the decision of the Commissioner. This appeal followed.

We review the Commissioner's final decision to determine whether it is supported by substantial evidence and whether the correct law was applied. See 42 U.S.C.A. § 405(g) (West Supp. 1998); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). We do not re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the Commissioner. See Hays, 907 F.2d at 1456.

Byrd first argues that the ALJ's evaluation at step two of the sequential evaluation is not supported by substantial evidence and did not rely upon the proper definition of non-severe impairment. The regulatory sequential evaluation process, 20 C.F.R.§ 404.1520 (1997), provides that if a claimant is not engaging in substantial gainful activity, it must be determined whether he or she has a "severe" impairment or impairments. The ALJ found that Byrd's combined musculoskeletal impairments were severe, but that her hypertension, thyroid disorder, diabetes mellitus, cataracts, and depression were not severe. An impairment is severe when, either by itself or in combination with other impairments, it significantly limits a claimant's physical or mental abilities to perform basic work activities. See 20 C.F.R. §§ 404.1520(c), 1521.

3

Byrd maintains that the ALJ applied the wrong standard in finding the remaining impairments non-severe. She argues that the correct standard is found in Social Security Ruling (SSR) 85-28. Under that ruling, an impairment is non-severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." SSR 85-28.

The Commissioner argues that the ALJ properly used the language of 20 C.F.R. § 404.1521(c), which defines a non-severe impairment as one that does not "significantly limit[ ] your physical or mental ability to do basic work activities." We agree. The word "minimal" is to explain the meaning of the phrase "not significant," rather than to change the standard for finding an impairment non-severe. See SSR 85-28, at 2 (changes in regulatory language were intended to clarify the circumstances under which a finding of not disabled could be justified; not to alter the levels of severity for such a finding). We therefore find no error in the ALJ's use of the phrase "significantly affect" in determining that some of Byrd's impairments were not severe.

On appeal, Byrd contends that sufficient evidence existed to support a finding of severe impairment for diabetes, weight, and hypertension.[2] Byrd asserts that because she was prescribed special shoes to prevent future complications due to her diabetes, it was significantly affecting her life. The treatment notes in the record indicate that while Byrd suffered from edema in her lower extremities, there were no problems with her feet related to diabetes. Therefore, we find that sufficient evidence existed to find that this impairment was not severe. Byrd also alleges that she suffered from blurred vision as a result of her diabetes. While Byrd testified to this at the ALJ's hearing, there is no reference in the medical record of Byrd reporting this symptom to treating or examining doctors.

_____

[2] Byrd did not object to the magistrate judge's recommendation regarding the ALJ's proper finding of non-severe impairment for weight. The timely filing of objections to a magistrate judge's recommendation is necessary to preserve appellate review of the substance of that recommendation when the parties have been warned that failure to object will waive appellate review. See Wright v. Collins , 766 F.2d 841, 845-46 (4th Cir. 1985). See generally Thomas v. Arn, 474 U.S. 140, 146-47 (1985). Therefore, we will not review the weight claim related to this issue.

4

Finally, Byrd alleges that her blood pressure reading of 170/116 on January 7, 1994, supports a finding that her hypertension is severe according to 20 C.F.R. Pt. 404, Subpt. P, App. 1,§ 9.09B (1997). In order to meet the requirements of § 9.09B, diastolic pressure must be persistently in excess of 100 mm Hg. Byrd's recorded blood pressure does not meet this requirement. From 1993 to 1994 her readings were: 130/90, 120/70, 140/90, 130/80, and 170/116. On the date of the 170/116 reading, Byrd admitted that she had not taken her medication on that morning. Therefore, substantial evidence does not support a finding of severe-impairment for hypertension.

Byrd contends that the ALJ erred in failing to complete a Psychiatric Review Technique Form (PRTF). Thus she claims that there was no substantial evidence supporting the ALJ's finding that her depression did not constitute a severe mental impairment.

To determine whether a mental impairment exists, an ALJ must record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment contained in a claimant's case record. See 20 C.F.R. § 404.1520a(b) (1997). A claimant's statements alone are insufficient to establish a mental impairment. See 20 C.F.R. § 404.1529(a) (1997). To demonstrate a mental impairment, a claimant must demonstrate signs of a psychological abnormality that can be medically described and evaluated through the use of clinical and laboratory diagnostic techniques. Id. An ALJ is required to complete a PRTF only if the ALJ determines that a mental impairment exists. See 20 C.F.R. § 404.1520a(b)(2), (d). The ALJ's decision only notes that Byrd had a history of depression; he did not find that she had a mental impairment as defined by the regulations. Having found no impairment, the ALJ was not required to complete a PRTF.

Byrd next argues that the ALJ committed reversible error by not affording controlling weight to the opinion of her treating physician, Dr. Ronald Gioffre. At the fourth step of the sequential evaluation, the ALJ assessed Byrd's residual functional capacity. In making the determination, the ALJ considered questionnaires completed by Dr. Gioffre on September 22, 1994. On forms with descriptions of the demands of light and sedentary work, Dr. Gioffre simply marked the "no" box on each form. His only explanation of the restriction was "because of multiple joint complaints."

5

Byrd argues that Dr. Gioffre's treatment over numerous years for joint problems provides acceptable medical support for his opinion on the forms. However, the treatments for joint problems covered a period when Byrd was working as a dye cutter. Therefore, the treatments from 1980 until 1992 do not support Dr. Gioffre's opinion that Byrd is incapable of working because, during the treatment time, Byrd was working as a dye cutter.

The opinion of the claimant's treating physician will be given great weight and will be disregarded only if there is persuasive contradictory evidence. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Under the social security regulations, a treating physician's opinion will be given controlling weight if (1) it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) it is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2) (1997). If the treating physician's opinion does not satisfy these criteria, then it must be analyzed as any other medical opinion of record. See 20 C.F.R. § 404.1527(d) (1997).

The ALJ properly did not accord Dr. Gioffre's opinion great or controlling weight because Dr. Gioffre's opinion was contradicted by the objective evidence in the record, and other medical opinion evidence. Specifically, the ALJ found that Dr. Gioffre's September 22, 1994, opinion was not supported by his own clinical findings and objective evidence. The ALJ observed that Dr. Gioffre previously restricted Byrd only from heavy lifting and repetitive motions. The ALJ also observed that while Dr. Gioffre vaguely restricted repetitive use of the arms and legs, there was no medical basis for the restriction. With respect to the arm-use restriction, Dr. Gioffre was referring to shoulder motion. The ALJ observed that in the consultative evaluation performed in January 1994, Byrd's hands were reported to display full range of motion with a fairly good grip. The elbows and wrists also displayed good range of motion. We therefore find that the ALJ did not err in finding that Dr. Gioffre's opinion was not supported by the record.

Next, Byrd argues that the ALJ erred in finding that she does not have an impairment or combination of impairments that rises to the requisite level of severity to meet or constitute the medical equiva-

6

lence of an impairment listed in the Social Security Regulations. Byrd argues that the medical evidence in this case equals the listing for obesity because of the combined effect of her obesity, arthritis, and hypertension.

Under 20 C.F.R. § 404.1520, if a person has a severe impairment and is not engaging in substantial gainful activity, a disability claim will be granted if the claimant has an impairment or combination of impairments that either meets or equals the criteria of an impairment listed in Appendix 1, which in the case of an obesity claim is 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.09. Section 9.09 requires that a claimant meet certain weight and height requirements, and it is uncontested that Byrd did not meet these criteria. The claimant must also meet one of five additional requirements.[3]

A claimant for disability benefits has the burden of proving his disability. See Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). It is not enough that the impairment have the diagnosis of a listed impairment; it must also have the findings shown in the listing of that impairment. See 20 C.F.R. § 404.1525(d) (1997). The Secretary compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. See 20 C.F.R. § 404.1526(a) (1997). Medical equivalence can be found if the medical findings are at least equal in severity and duration to the listed findings. See 20 C.F.R. § 404.1526(a). "Medical equivalence must be based on medical findings," and "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b) (emphasis omitted). Medical testimony may also be considered.

_____

[3] The additional requirements are: (1) History of pain and limitation of motion in any weight-bearing joint or spine (on physical examination) associated with x-ray evidence of arthritis in a weight-bearing joint, or spine; (2) Hypertension with diastolic blood pressure persistently in excess of 100 mm. Hg measured with appropriate size cuff; (3) History of congestive heart failure manifested by past evidence of vascular congestion such as hepatomegaly, peripheral or pulmonary edema; (4) Chronic venous insufficiency with superficial varicosities in a lower extremity with pain on weight-bearing and persistent edema; or (5) Respiratory disease with total forced vital capacity equal to or less than the value specified in Table III-A or III-B or III-C.

7

Byrd concedes that she may not objectively meet all of the criteria for any subsection. Her primary argument is that her alleged impairments in combination are medically equivalent to a§ 9.09 impairment. She contends that she comes close on several subsections: hypertension, obesity, diabetes, and arthritis; so that the record reflects medical equivalency of a listed impairment. We disagree. Since under the regulations medical equivalence must be based on medical findings and must be supported by medically acceptable clinical and laboratory diagnostic techniques, Byrd failed to establish medical equivalency.

The ALJ and the district court had on record substantial medical evidence that does not demonstrate medical equivalency. Byrd's weight was 250 pounds. Given Byrd's height, Listing 9.09A and B require a weight of 298 pounds. To be disabled under§ 9.09 because of hypertension, the claimant's diastolic blood pressure must persistently exceed 100 mm Hg. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.09B. However, Byrd's reported diastolic pressures (90, 90, 70, 90, 80, 80, 90, 80, 70, 80) were not persistently above 100. The only reading above 100 was 170/116. As noted previously, on the date of that reading, Byrd admitted she had not taken her medication that morning.

Byrd makes a conclusory statement on appeal that her diabetes and arthritis combine with her obesity and hypertension to be medically equivalent to the listings of § 9.09.**4** Because a claimant for disability benefits has the burden of proving his disability, we find that Byrd's argument and medical evidence are insufficient to support a finding of medical equivalence on these bases. See Hall , 658 F.2d at 264. We therefore find that the record supports the finding that Byrd does not have an impairment or combination of impairments that meets or is medically equal to one listed in § 9.09.

Byrd argues next that the ALJ's determination of her residual functional capacity is inconsistent with the medical evidence in the record. Specifically, Byrd argues that the ALJ should have included Dr. Giof-

_____

**4** Byrd's brief merely states that her "diabetes and multiple joint complaints and related complication more than make up for" the failure to meet the weight requirement of § 9.09. Appellant's Brief at 20.

fre's recommendation that Byrd not engage in repetitive use of her upper and lower extremities due to her bursitis in determining her residual functional capacity. The ALJ found that Byrd had the residual functional capacity to perform the full range of light work, as limited by some restrictions. The ALJ did incorporate Dr. Gioffre's recommendation into his determination of Byrd's residual functional capacity. The restrictions on walking, standing, or sitting compensate for her hip bursitis and knee disability, and the restrictions on overhead reaching compensate for her shoulder bursitis.

On appeal, Byrd argues that the district court erred in finding that there is no evidence in the record that Dr. Gioffre believed that she was incapable of repetitive use of her hands. Byrd points to treatment notes from 1981 to 1987 that diagnose her with "bilateral carpal tunnel-like syndrome." (AR 138). These notes are not relevant to the disability period claimed.[5] Dr. Gioffre's notes regarding restriction do not mention any restrictions regarding her hands. We therefore find that the ALJ's determination of residual functional capacity is supported by substantial evidence and that the hypothetical question posed to the vocational expert (VE) was proper.

Byrd argues next that the ALJ's determination that she can perform other work is not supported by substantial evidence because she cannot perform any of the seven jobs identified by the VE because they all involve reaching. Byrd cites the job descriptions in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, which indicate that either continual, frequent, or occasional reaching is usually required for the jobs identified. Although reaching is involved in these jobs, the reaching does not necessarily conflict with Byrd's restriction from overhead reaching. The job descriptions do not state that overhead reaching is required. In addition, the VE testified that the seven jobs named do not require overhead reaching.[6]

_____

[5] The consultative examiner for the Social Security Administration found that Byrd had mild swelling of her hands on January 7, 1994. However, the examination did not reveal that she had a limitation for use beyond what is included in the residual functional capacity.

[6] Byrd maintains that because the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles refers to

9

Finally, Byrd alleges that the ALJ's determination that her subjective complaints of pain are not credible is not supported by substantial evidence. The ALJ considered Byrd's subjective complaints of pain in assessing her residual functional capacity. The ALJ determined that her subjective complaints were credible only to the extent that she was precluded from performing more than a limited range of light work.

An ALJ's assessment of a claimant's credibility regarding the severity of pain is entitled to great weight when it is supported by the record. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984). Subjective complaints of pain are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Once the record establishes the underlying impairment, the second step is consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996); see also Mickles v. Shalala, 29 F.3d 918, 922-30 (4th Cir. 1994).

The ALJ's report clearly demonstrates that he considered the opinion of Byrd's physicians, her medical history, her treatments and medications, her daily living activities, and her own subjective claims regarding her pain. We therefore find no merit to Byrd's contention that the ALJ did not give proper consideration to her pain and did not properly assess her credibility.

We therefore affirm the district court's order granting the Commissioner's motion for judgment on the pleadings and denying Byrd's motion for judgment reversing the Commissioner's decision denying

_____

job numbers found in the Dictionary of Occupational Titles (DOT), the DOT is in conflict with the VE's testimony. Both parties raise the issue of whether the DOT or the VE's testimony controls in such a circumstance. We decline to address the issue because we find that the VE's testimony that overhead reaching is usually not involved in the seven stated jobs is not in conflict with the job descriptions that require non-specific reaching.

10

social security disability benefits. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

11