**Jimmie Lee JOHNSON, Plaintiff,**

**v.**

**David A. WILLIAMS, Warden,
et al., Defendants.**

**Civ. A. No. 90–0416–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 25, 1991.

Jimmie Lee Johnson, pro se.

Mark R. Davis, Asst. Atty. Gen., Public Safety and Economic Dev. Div., Richmond, Va., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This case reflects that a prison "lockdown" [1] undertaken for valid security reasons does not violate inmates' constitutional rights even though the inmates may thereby suffer hardships. This matter comes before the Court on defendants' motion for summary judgment. Plaintiff, Jimmie Lee Johnson, filed this action pursuant to 42 U.S.C. § 1983, alleging numerous constitutional violations resulting from an institutional lockdown at Powhatan Correctional Center, Virginia. As the parties to this action have had ample opportunity to respond to the motion, this matter is now ripe for disposition. For the reasons stated below, the motion for summary judgment is GRANTED.

On November 26, 1989, a riot occurred at Powhatan Correctional Center. In the course of the riot, a number of staff members were injured and property was damaged, primarily in cellblocks C–1 and C–2. As a result of the riot, a lockdown was imposed on the entire institution, but was lifted shortly after the incident in all areas of the Center except cellblocks C–1 and C–2, where disturbances continued to occur. Restrictions in C–1 and C–2 were lifted gradually, with C–1 returning to normal operations circa January 4, 1990 and C–2 circa April, 1990. Plaintiff was assigned to a single cell in C–2 at the time of the disturbance. He was moved to C–1 on or around February 5, 1990. Thus, plaintiff was subjected to lockdown restrictions for roughly the nine to ten week period spanning November 26 to February 5. Plaintiff claims that during this period he was deprived of certain constitutional rights. Specifically, plaintiff claims that:

(1) he was denied rudiments of personal hygiene;

(2) the overcrowded conditions endangered his health;

(3) the diet was inadequate;

(4) the clothing provided was improper;

(5) the medical attention provided was insufficient;

(6) climate conditions were either excessively hot or excessively cold;

(7) he was denied access to legal materials;

(8) the meals served were cold and he was forced to eat them in his cell;

(9) he was denied fresh air and regular outdoor exercise.

This Court recently addressed almost identical issues in a case filed by another Powhatan inmate and held that the restrictions imposed did not violate the prisoner's Eighth Amendment rights. In *Howard v. Williams*, Civil Action No. 90–0125–AM, 90–0147–AM (June 4, 1991) (unpublished), this Court concluded that although the conditions imposed during the lockdown were harsher than normal conditions, the restrictions were constitutional because they were imposed to further the legitimate governmental interest of maintaining order and safety within the state's prison system. *Howard*'s rationale and result are applicable here.

The Eighth Amendment prohibits prison conditions that amount to cruel and unusual punishment. In general, conditions that do not offend contemporary notions of decency are not unconstitutional. *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). To the extent that conditions are restrictive, indeed, even harsh, they are part of the

---

**1.** An "institutional lockup" is an emergency measure in which one, several, or all inmates of the institution may be temporarily confined pending investigation. Va. Dept. of Corr. Adult Institutional Services Guideline 411(III)(J) (Change 6, April 2, 1979).

penalty criminal defendants must pay for their offenses against society. *Id.* In reviewing Eighth Amendment claims, a federal court does not sit with the authority to second guess administrative decisions unless those decisions effectively deprive inmates of constitutional rights. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Supreme Court "has persistently reminded lower courts that considerations of separation of powers and institutional competence suggest the need for judicial restraint before reaching the stern conclusion that prison administrators' conduct constitutes deliberate indifference." *Lopez v. Robinson,* 914 F.2d 486 (4th Cir.1990). Even where prison regulations infringe inmates' constitutional rights, the United States Supreme Court has held that the regulations are valid if reasonably related to legitimate penological interests. *Turner v. Safly,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). In determining whether a regulation serves a legitimate penological interest, the Court must consider four factors: (1) whether there is a rational connection between the prison regulation and a legitimate governmental interest; (2) whether other avenues remain open for the exercise of the infringed constitutional right; (3) the impact that accommodation of the prisoner would have on fellow inmates or prison staff; and (4) the absence of alternatives available to prison officials. *Id.* at 89–91, 107 S.Ct. at 2261–2263. With these factors in mind, the Court now turns to plaintiff's specific claims.

### I.

■ At the outset, the Court notes that a number of plaintiff's claims, even if true, simply do not rise to the level of a constitutional violation under any circumstances. Thus, plaintiff makes only the bare allegation that he was denied rudiments of personal hygiene; there is no elaboration on the nature or effect of the alleged deprivation. Defendants contend, and plaintiff does not dispute, that inmates were allowed two showers per week and could place orders for personal hygiene items to make up for the restriction on personal visits to the canteen. On the record before the Court, it appears plaintiff had an adequate opportunity to maintain personal hygiene, although the method of purchasing hygiene items was altered. There is, therefore, no real or substantial deprivation of hygiene products here and thus, plaintiff, in this respect, does not state a claim of constitutional magnitude.

The Court assumes that plaintiff's claim that the clothing provided was inadequate also relates to his claim that he was denied rudiments of personal hygiene. Plaintiff, however, does not explain why the clothing was inadequate, nor does he indicate what clothing was provided for him during the lockdown. His conclusory statement, therefore, is insufficient to state a claim under § 1983. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); *Benson v. Cady,* 761 F.2d 335, 338 (4th Cir.1985) (conclusory statement set forth in the pleadings does not state a claim if factual allegations are insufficient); *White v. Boyle,* 538 F.2d 1077, 1079 (4th Cir.1976) (conclusory allegations set forth in the pleadings are insufficient to overcome a motion for summary judgment). Keeping in mind, however, the wide latitude afforded to *pro se* plaintiffs,[2] the claims relating to denial of proper clothing are dismissed without prejudice.

### II.

Plaintiff's remaining claims present facts which might state a claim under § 1983. In each claim, however, plaintiff fails to refute defendants' factual statements or to present sufficient facts to overcome defendants' motion for summary judgment.

---

**2.** *E.g. Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977).

■ Plaintiff alleges that his food was inadequate and cold and that he was forced to remain in his cell while eating. These claims fall far short of stating a constitutional violation. "It is well established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White,* 761 F.2d 975, 986 (4th Cir.1985) (*quoting Ramos v. Lamm,* 639 F.2d 559, 571 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)). Yet here there is only the conclusory allegation that meals were inadequate; no supporting facts are supplied. The simple fact that plaintiff was served cold bag lunch meals in his cell does not indicate that the meals were less than nutritious or served under unsanitary conditions. *See Burgin v. Nix,* 899 F.2d 733, 734 (8th Cir.1990) (sacked meals held to provide an adequate diet).

■ Plaintiff's medical claims allege that he was denied sufficient medical attention and that the overcrowded conditions in the jail posed a danger to his health. It is well settled that deliberate indifference to a prisoner's serious medical needs constitutes a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In order to state a claim of deliberate indifference, plaintiff must supply "hard evidence" of an unnecessary and wanton infliction of pain which has resulted in serious medical or emotional deterioration. *Lopez v. Robinson,* 914 F.2d 486 (4th Cir.1990); *Shrader v. White,* 761 F.2d at 979. For instance, in *Miltier v. Beorn,* 896 F.2d 848 (4th Cir. 1990), prison workers were held liable for ignoring a known risk of harm to an inmate with a heart condition, which resulted in the death of the inmate. Similarly, other cases have imposed liability in instances where the risk of danger was either known or would be apparent to a reasonable person in the particular position. *See Cooper v. Dyke,* 814 F.2d 941 (4th Cir.1987) (failure

to treat a gunshot wound was deliberately indifferent); *Loe v. Armistead,* 582 F.2d 1291, 1296 (4th Cir.1978) (deliberate indifference shown where defendants failed to treat an obviously broken arm) *cert. denied,* 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980).

In this case, no "hard evidence" exhibiting the unnecessary and wanton infliction of pain exists. Indeed, plaintiff provides no specific facts regarding the alleged deprivation of medical treatment. By contrast, defendants state that plaintiff requested medical attention on two occasions and that each request was addressed promptly. On December 7, 1989, plaintiff submitted a medical request form for a hernia operation. On December 16, 1989, a reply was sent to plaintiff, informing him that he had been added to a list of inmates requesting elective surgery.[3] On March 16, 1990, plaintiff complained about a chronic knee problem and requested orthopedic shoes. A doctor examined plaintiff the same day and determined that orthopedic shoes were not necessary. No evidence exists to indicate that plaintiff requested medical attention beyond these two requests made prior to the Powhatan lockdown. In fact, plaintiff does not even assert that he made requests for medical attention which were denied or that he had a medical problem which required attention. Comparing the instant facts to the facts in *Miltier, Loe* and *Cooper,* the Court cannot reasonably find that plaintiff has established the unnecessary or wanton infliction of pain as required by *Lopez.*

■ To the extent that plaintiff claims medical deliberate indifference based upon the doctor's decision not to prescribe orthopedic shoes, such a claim is without merit as a matter of law. Mere disagreements between an inmate and his physician do not state claims of medical deliberate indifference. *See Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292; *Miltier v. Beorn,* 896 F.2d at 852 ("mere negligence or malpractice does not violate the eighth amendment"); *Benson v. Cady,* 761 F.2d at 340 (same); *Russel v. Sheffer,*

---

**3.** See affidavit of W.P. Welch, Medical Administrator at Powhatan Correctional Center.

528 F.2d 318, 319 (4th Cir.1975) ("Questions of medical judgment are not subject to judicial review."). Moreover, plaintiff may not hold supervisory defendants liable for acts of medical professionals unless he alleges personal involvement by those defendants in the alleged deprivation of medical treatment. *Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir.1977); *see also Miltier v. Beorn*, 896 F.2d at 854–855 (supervisors ordinarily are entitled to rely on the medical judgments made by prison physicians and therefore may not be held liable for those judgments); *but see Cooper v. Dyke*, 814 F.2d 941 (4th Cir.1987) (police officer who ignored repeated requests for medical attention from gunshot victim could not claim "reasonable reliance" on paramedics' interrupted examination). For the reasons stated, plaintiff's claim of medical deliberate indifference is insufficient to overcome the motion for summary judgment.

■ In addition, plaintiff vaguely states that the overcrowded conditions posed a threat to his health. Although crowded living conditions which implicate other constitutional deprivations or impose severe restrictions and disadvantages on the prison population may state an Eighth Amendment claim, *see Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392 (overcrowded conditions which subject inmates to vermin infestation and rampant violence and deprive inmates of any personal hygiene is cruel and unusual punishment); *Johnson v. Levine*, 588 F.2d 1378 (4th Cir.1978) (where overcrowding results in lack of sanitation, inadequate meal service and deficient medical care, inmates have established an Eighth Amendment claim), plaintiff here makes only the speculative claim that the crowded conditions presented the possibility of health hazards. Yet no facts are provided to indicate that the living conditions at Powhatan have adversely affected his health or served to deny him any other constitutionally protected right.

■ Next, plaintiff charges that he was subjected to excessive heat and cold, presumably owing to the many broken windows resulting from the November disturbance. Although inadequate heating and ventilation may rise to the level of cruel and unusual punishment, *Bolding v. Holshouser*, 575 F.2d 461 (4th Cir.), *cert. denied*, 439 U.S. 837, 99 S.Ct. 121, 58 L.Ed.2d 133 (1978), no Eighth Amendment claim is stated unless plaintiff establishes both that conditions were sufficiently serious and that defendants were deliberately indifferent to those conditions. *See Wilson v. Seiter*, —— U.S. ——, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). To meet the first test, plaintiff must provide concrete and specific evidence of serious medical and emotional deterioration. *See Lopez v. Robinson*, 914 F.2d at 491. The undisputed record also reflects that the Maintenance Department continually worked to repair the windows, but because repair of all windows could not be completed simultaneously, cardboard was placed over broken windows awaiting repair. During the period prior to the permanent repair of all windows, extra blankets were available to inmates upon request. In addition, the heating system supplied heat to each cell. With regard to ventilation, each cell is equipped with a window that opens for fresh air. To be sure, it is possible that during the lockdown some of the windows were not functional because they were broken during the disturbance. Even so, plaintiff's claims do not cross the constitutional threshold. First, plaintiff fails to show that the heating and ventilation conditions at the prison fell below the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. at 347, 101 S.Ct. at 2399. Second, there is no indication that defendants were deliberately indifferent to these problems. On the contrary, defendants took reasonable measures to rectify the destruction caused by inmates during the November incident.

■ With regard to law library access, plaintiff claims that he was denied the right to legal materials and that officials refused to provide materials upon request of inmates subject to the lockdown. Defendants dispute plaintiff's claim that materials were denied to inmates on lockdown and contend that inmates could make written requests for legal materials, which

were then provided to inmates for use in their cells. The factual dispute between the parties on this matter is immaterial to the disposition of the claim. It is well settled that states must affirmatively provide prisoners with either law libraries or persons trained in the law. *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). States need not, however, provide both law libraries and advisors. *Williams v. Leeke,* 584 F.2d 1336 (4th Cir.1978). Although access to the law library was restricted during lockdown, defendants show that inmates were not restricted in their contacts with the court-appointed attorney assigned to advise and assist inmates at the institution. Because legal advisors were available for plaintiff's use, the Court need not reach the issue of whether law library access limited to written requests denies a prisoner's right of access to legal information. In any event, in the absence of a showing of specific prejudice, it is very doubtful that the restriction imposed here for only the limited nine to ten week period violated plaintiff's constitutional right.

 Finally, plaintiff claims that he was denied recreation and outdoor exercise. Defendants acknowledge that exercise was limited during the lockdown, but note that inmates were allowed out of their cell for approximately 2 hours per day and were allowed outdoor recreation twice a week, weather permitting. In *Sweet v. South Carolina Dept of Corrections,* 529 F.2d 854, 865–66 (4th Cir.1975), the Fourth Circuit held that a limitation on exercise which continues for an extended period of time and which is harmful to a prisoner's health constitutes cruel and unusual punishment. Even assuming, *arguendo,* the truth of plaintiff's claims, the restrictions placed on exercise and recreation opportunities do not violate plaintiff's constitutional rights, given the security reasons for the lockdown. Applying the standard set forth in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, it is clear in this case that defendants had a legitimate penological interest in keeping prisoners in their cells and limiting the amount of time outside of cells for recreation and exercise. First, following the violence and rioting in November 1989, there was a great need for special security measures at Powhatan, including holding prisoners in their cells for longer than normal periods of time. Second, although plaintiff's claim is vague, it appears that prisoners were in fact allowed out of their cells for short periods every day, and although opportunities for exercise and recreation were heavily restricted, prisoners had some, albeit limited, opportunity to exercise if they chose to do so. Last, considering the circumstances and the need for security, prison officials had no other alternative but to restrict prisoners to their cells in order to prevent another outbreak of violence. Therefore, the restrictions placed on plaintiff during the lockdown, even though arguably harsh, were penologically justified and did not violate plaintiff's constitutional rights.

An appropriate order shall issue.