**William A. STAPLES, Plaintiff,**

v.

**VIRGINIA DEPARTMENT OF CORRECTIONS, et al., Defendants.**

**Civ. A. No. 3:94CV469.**

United States District Court, E.D. Virginia, Richmond Division.

July 19, 1995.

William A. Staples, Jarratt, VA, pro se.

Jill Theresa Bowers, Office of the Attorney General, Commonwealth of Virginia, Richmond, VA, for Virginia Department of Corrections.

Jeff Wayne Rosen, David Ian Tenzer, Adler, Rosen & Peters, P.C., Virginia Beach, VA, for Correctional Medical Services.

## MEMORANDUM

LOWE, United States Magistrate Judge.

Plaintiff, William A. Staples, a Virginia state prisoner proceeding *pro se* and *in forma pauperis*, brings this § 1983/ADA/VDA action alleging defendants are not properly addressing his medical needs. The defendants have filed motions for summary judgment. Although given an opportunity, plaintiff has not responded. Jurisdiction is appropriate pursuant to 28 U.S.C. §§ 1343(a)(3) and 636(c).

Plaintiff alleges:

1. Due to the fact that he is quadriplegic and thus handicapped, defendant has isolated him in the infirmary at Greensville Correctional Center.

2. The showers lack call-bells or similar methods of summoning help in the event of a fall.

3. There is not a proper shower-chair that he can use to take a shower.

4. He is unable to get into the whirlpool, which would be therapeutic, due to the fact that it lacks handicap access.

5. The bathrooms are not handicap accessible.

6. His vital signs are not checked regularly.

7. On October 19, 1993, he fell and injured himself and was not treated until eight hours later.

8. The physical therapy he receives is grossly inadequate.

9. The nurses do not check on him during the night which is essential, because he cannot summon help.

10. He is left in inhumane conditions at night for prolonged periods; i.e. when he seeks assistance in cleaning himself following a bowel movement. When he seeks assistance, it takes up to a half hour for a response.

First, defendant, Virginia Department of Corrections (VDOC), has raised the defense of qualified immunity. The Fourth Circuit, in *Torcasio v. Murray*, 57 F.3d 1340 (4th Cir.1995), held that "Congress must speak unequivocally before [the court] will conclude that it has 'clearly' subjected state prisons to its enactments." *Id.* at 1346. Congress did not clearly state that state prisons would be subject to the ADA, and thus, defendants in *Torcasio* were entitled to qualified immunity " 'as long as their actions could reasonably have been thought consistent with the rights they [were] alleged to have violated.' " *Id.* at 1343–48 (citation omitted).

■ Likewise, in the case at bar, defendant, VDOC, is entitled to qualified immunity. At no time prior to or subsequent to filing of this suit has the Supreme Court, Congress, or the Fourth Circuit held that the ADA applies to state prison facilities.[1] Thus, defendant, VDOC's, alleged failure to comply with the ADA is reasonable and consistent with the legal duties and rights imposed upon it in regards to plaintiff's care.

Defendant, Correctional Management Systems (CMS), has not raised the defense of qualified immunity, but, nevertheless cannot be sued by plaintiff under the ADA. As stated, *infra*, the Fourth Circuit has all but held that the ADA, *per se*, does not apply in the state prison context. This court is persuaded by the reasoning and dicta of the Fourth Circuit which states absent clear intent on the part of Congress, its enactments do not apply to integral state functions. *Id.* at 1344. Plaintiff has not pointed to, and the Fourth Circuit was unable to locate, any portion of the ADA which expressly made it applicable in the state prison context.

■ Coupling the lack of congressional intent to make the ADA applicable in the state prison context with the great interference and impact this federal court would have on integral state functions if this Court were to hold any other way, this Court finds the ADA inapplicable in the state prison context. Accordingly, defendants' motions for summary judgment on claims 1–10, to the extent the claims were brought under the ADA, will be DISMISSED.

■ As to plaintiff's claims 1–10 brought pursuant to § 1983, in order to be amenable to suit under 42 U.S.C. § 1983, the named defendants must be persons within the meaning of the statute. Neither "states nor governmental entities that are considered arms of the State for 11th amendment purposes are persons under Section 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). Accordingly, VDOC is not a person amenable to suit under § 1983. Plaintiff was given an opportunity to particularize and name the specific VDOC employees who allegedly violated his constitutional rights. Plaintiff failed to name any VDOC employee specifically. Thus, defendant VDOC's motion for summary judgment on claims 1–10 brought pursuant to § 1983 will be GRANTED.

■ CMS, however, is amenable to suit under § 1983. Corporations are considered "persons" for purposes of § 1983. *Croy v. Skinner*, 410 F.Supp. 117 (N.D.Ga.1976). Since a corporation is amenable to suit under § 1983 and since CMS stands in place of individual physicians, it may be liable under

---

1. In fact, with its ruling in *Torcasio v. Murray*, the Fourth Circuit has all but held that, *per se*, the ADA does not apply to state prison facilities.

§ 1983. *Conner v. Donnelly*, 42 F.3d 220 (4th Cir.1994).

Plaintiff's claims fall into two categories: (1) denial of adequate living conditions (claims 1–5); and (2) denial of adequate medical care (claims 6–10). To prevail on claims 1–5 under the Eighth Amendment, a plaintiff must allege and establish that he was subjected to an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2323–24, 115 L.Ed.2d 271 (1991), "contrary to contemporary standards of decency." *Helling v. McKinney*, — U.S. —, —, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993). The pain inflicted must amount to more than mere discomfort, because discomfort is "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).

The Eighth Amendment imposes a duty on prison officials to provide inmates with humane conditions of confinement. *Farmer v. Brennan*, — U.S. —, —, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994). There can be situations in which conditions of confinement, when coupled with others, may establish an Eighth Amendment violation, even though each standing alone would be insufficient. *Wilson*, 501 U.S. at 304, 111 S.Ct. at 2327. However, the deprivation visited upon the prisoner must be so great so as to deprive him of the "minimal civilized measure of life's necessities" before the Eighth Amendment is implicated. *Id.* There is a two-part test to determine if the deprivation complained of states a constitutional violation.

First there is an objective component that requires the court to determine if the alleged deprivation is sufficiently serious. *Farmer*, — U.S. at —, 114 S.Ct. at 1976. This factor "requires a court to assess whether society considers the risk of which the prisoner complains to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling*, — U.S. at —, 113 S.Ct. at 2482.

Secondly, there is a subjective factor that examines the state of mind of the prison official. Because the Eighth Amendment is offended only if there is an unnecessary and wanton infliction of pain, there must be a determination of whether the prison officials had a sufficiently culpable state of mind. *Farmer*, — U.S. at —, 114 S.Ct. at 1977. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.*[2]

Because the Supreme Court of the United States recognized in *Sandin v. Conner*, — U.S. —, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that segregated living conditions are within the range of confinement expected to result from conviction and imprisonment, plaintiff's claim 1 fails to satisfy the objective component of the test. *Id.* Plaintiff was placed in the infirmary with other inmates who needed special full time care. He was placed there to alleviate the possibility of harm which might result from his immobility or handicap. The risk of harm of being placed in the infirmary does not offend contemporary standards of decency: the risk, in fact, is non-existent. Therefore, plaintiff's claim 1 will be dismissed.

In claims 2–5, plaintiff asserts that defendant has not provided him with accommodations to enable plaintiff easier access to the shower, bathroom, and whirlpool. Plaintiff alleges that the lack of accommodations *could* result in harm in the future.

First, plaintiff has not provided the Court with any authority, nor has the court located any support for plaintiff's claim that he has a constitutional right to have defendants accommodate him to the extent he seeks to be accommodated. Second, plaintiff's allegations are made in the form of an unsworn complaint, and plaintiff made no attempt to counter the sworn affidavits of defendant.

Defendant indicates that (1) the shower stalls located in plaintiff's area all have call-bells; (2) there are call-buttons next to plaintiff's bed; (3) plaintiff has a wheelchair other

---

**2.** It appears that defendant, CMS, had no involvement or control over plaintiff's living conditions. Accordingly, plaintiff's claims 1–5 against CMS under § 1983 are subject to dismissal for failure to show personal involvement by CMS. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). In an abundance of caution, the Court will also address each claim on its merits.

than his personal one for showering; (4) whirlpool exposure is contraindicated for someone with plaintiff's medical condition; and (5) the bathrooms are sufficiently accessible by wheelchair. Weighing defendant's sworn affidavits against plaintiff's unsworn complaint, the court finds no merit in plaintiff's claims 1–5.

██ Finally, even assuming plaintiff's allegations as to claims 1–5 are accurate, he has failed to show any serious harm as a result of the alleged violations by defendant. The most plaintiff has shown is that some future harm might occur. That, alone, is insufficient to state a claim. *See Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993) (holding that to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions).[3] Accordingly, CMS will be GRANTED summary judgment on claims 1–5.

██ In order to prevail on claims 6 through 10, plaintiff must establish that the defendant was deliberately indifferent to plaintiff's serious medical need. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Deliberate indifference to a serious medical need exists only if the treatment provided is so inadequate or incompetent that it shocks the conscience. *Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990). Mere disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged. *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. Further, questions of medical judgment should not be subject to judicial review in a § 1983 claim. *Russell v. Sheffer,* 528 F.2d 318, 319 (4th Cir.1975). While prisoners are entitled to reasonable medical care, any alleged mistreatment or nontreatment must be

cruel and unusual to present a colorable claim under § 1983. *Id.* at 319; *Estelle,* 429 U.S. at 105–06, 97 S.Ct. at 291–92. A prison official will only be liable if he knows that an inmate faces a substantial risk of serious harm and consciously disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* —— U.S. ——, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

Deliberate indifference describes a state of mind more blameworthy than negligence. *Farmer,* at ——, 114 S.Ct. at 1978. Specifically, the United States Court of Appeals for the Fourth Circuit has held that:

> [T]o establish that a health care provider's actions constitute deliberate indifference ..., the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.... Nevertheless, mere negligence or malpractice does not violate the Eighth Amendment.

*Miltier,* at 852. In short, a plaintiff must supply "hard evidence" of an unnecessary and wanton infliction of pain which has resulted in serious medical or emotional deterioration. *Johnson v. Williams,* 768 F.Supp. 1161, 1165 (E.D.Va.1991) (citing *Lopez v. Robinson,* 914 F.2d 486 (4th Cir.1990)).

The record indicates plaintiff is a stable paraplegic with 50–60 percent upper body use. He is housed in the infirmary where he is checked at least once during the evening and night shifts. He can ambulate on his own; write with a special instrument; get out of his bed on his own and into bed with assistance. Further, plaintiff uses a urinal and has bladder control. He cannot evacuate his bowels without a laxative, and is not incontinent of bowels. Often plaintiff is not cooperative in emptying his bowels during the daytime when the greatest number of medical personnel are available to assist him in cleansing. The medical doctor who has attended plaintiff, Dr. Swetter, notes that

---

**3.** Arguably, plaintiff might be able to state a claim without showing past harm by showing there is a sufficient serious future risk to his health or safety which offends contemporary standards of decency. *Helling,* —— U.S. at ——, 113 S.Ct. at 2480. This court finds that plaintiff's claims lack a factual basis to prove serious

future risk of harm. Further, this court finds that plaintiff is in the infirmary where there is staff on duty 24 hours a day. Plaintiff can garner assistance from one of those individuals so as to alleviate any serious risk to plaintiff's health or safety posed by plaintiff's claims 1–5.

plaintiff states a preference for evening bowel evacuations and uses his bowel regimen as a power struggle. Dr. Swetter notes there is no medical reason for plaintiff to evacuate his bowels at night, but plaintiff attempts to have a night regimen to increase contact with female nurses. To the extent plaintiff relieves his bowels at night causing a possible delay in cleansing assistance, Dr. Swetter states it is his medical opinion plaintiff suffers no medical harm by remaining uncleansed for periods as long as half an hour.

Dr. Swetter also states that it is his medical opinion that plaintiff is receiving appropriate physical therapy, two sessions per week, 45 minutes per session. Any greater amount would not increase plaintiff's motor function. Additionally, plaintiff is not an acute care patient and has no medical need for monitoring of vital signs. The vital signs are taken weekly, which is, in Dr. Swetter's opinion, adequate.

Finally, the medical records pertaining to the accident plaintiff suffered on October 19, 1993,[4] have been provided. They indicate that plaintiff fell while trying to use the urinal and suffered a 1½ inch laceration above his left eyebrow. Dr. Ramsey saw the plaintiff at 10:45 p.m. that evening and agreed steristrips, Motrin, and bedrest were appropriate. Plaintiff was administered all of the above and was also given an ice pack. Plaintiff continued to be monitored throughout that evening and the next day. He was seen by medical personnel in excess of ten (10) times in the twenty-four hours following the accident.

The court will address each claim 6 through 10 based on the record before it, noting again that plaintiff did not provide the court with a sworn complaint or attempt to counter the defendant's affidavits or medical records.

■ As to claims 6 and 8, there is simply no evidence that plaintiff suffers a serious medical need to which defendant is indifferent. Plaintiff's physician asserts that plaintiff's vital signs are checked in appropriate intervals and physical therapy is administered as often as is necessary and beneficial

to plaintiff. Although plaintiff may not agree with the course of treatment and frequency of care as pertains to physical therapy and reading of vital signs, he has not stated a claim. Mere disagreements with physicians over appropriate medical care are not actionable under § 1983 without a showing of exceptional circumstances. *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. Plaintiff has shown no exceptional circumstances. Accordingly, claims 6 and 8 will be DISMISSED.

■ As to claim 7, the uncontested medical records indicate plaintiff was treated by a physician on October 19, 1993, immediately following his accident. He received sutures, Motrin, an ice pack, and bedrest. Over the next 24 hours he was examined in excess of ten (10) times. There is simply no evidence of deliberate indifference on the part of defendant other than plaintiff's conclusory statement asserted in an unsworn document. Additionally, even accepting plaintiff's version, plaintiff does not state a claim. He does not allege that he received *no* medical care following his accident on October 19, 1993, only that a *doctor* did not evaluate him and his vital signs were not taken for 24 hours. Even if a doctor did not evaluate him, he does not deny that medical staff did. He received sutures, Motrin, and an ice pack, followed by bedrest. His wound was not left unattended. Additionally, even if he did not have his vital signs taken for 24 hours which he felt was a long period of time, that simply amounts to a difference of opinion as to appropriate medical care. The court will not second guess medical opinions regarding what is or is not appropriate medical care. *Russell,* 528 F.2d at 319. Accordingly, claim 7 will be DISMISSED.

■ Claim 9 has no basis in fact and no harm is presented by the allegation. First, plaintiff is in the infirmary where medical staff is on duty 24 hours a day. Second, defendant, by sworn affidavit, indicates plaintiff is checked at least once during the night and evening shifts. Third, there is a call button next to plaintiff's bed which he can use to summon help if staff is not within eyesight. Finally, even if plaintiff is not

---

4. Initially the court inaccurately noted that plain- tiff alleged the fall occurred on October 10, 1993.

checked each night, he has failed to demonstrate any resulting harm, *Strickler*, 989 F.2d at 1381, or sufficient serious future harm to his health and safety which would offend contemporary standards of decency. *Helling*, —— U.S. at ——, 113 S.Ct. at 2480. There is simply no indication that plaintiff's medical condition places him in a position in which he needs nightly monitoring. Accordingly, claim 9 will be DISMISSED.

 In claim 10 plaintiff asserts he is left in inhumane conditions because after emptying his bowels at night it takes up to a half hour for nurses to respond to clean him up. First, plaintiff places himself in this position by failing to cooperate with a daytime bowel regimen. The court will not entertain rewarding plaintiff for an alleged violation he brings upon himself. Second, to the extent plaintiff may have to wait a half hour to be cleansed after emptying his bowels, the deprivation is not sufficiently grievous to rise to the level of a serious risk to plaintiff's health or safety. Accordingly, plaintiff has failed to state a claim and claim 10 will be DISMISSED.

Having dismissed plaintiff's federal claims brought pursuant to the ADA and § 1983, this court will dismiss plaintiff's supplemental state claims brought pursuant to the Virginians with Disabilities Act (VDA). 28 U.S.C. § 1367(c)(3). *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In summary, all claims against VDOC and CMS brought pursuant to the ADA, VDA, and § 1983 will be DISMISSED.

An appropriate order shall issue.