**Lamar A. PENDERGRASS, Plaintiff,**

v.

**Col. D.R. HODGE, et al., Defendants.**

**No. Civ.A. 98–670–AM.**

United States District Court,
E.D. Virginia,
Alexandria Division.

May 17, 1999.

Lamar A. Pendergrass, Craigsville, VA, Jerome Aquino, Law Offices of Jerome Aquino, Alexandria, VA, for plaintiff.

W. Michael Holm, Redmon, Boykin & Braswell, LLP, Alexandria, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this *pro se* 42 U.S.C. § 1983 action, plaintiff alleges that defendants violated his constitutional rights while he was incarcerated at the Riverside Regional Jail (RRJ). Named as defendants are: Colonel D.R. Hodge, RRJ Superintendent; Colonel M.R. Reynolds, RRJ Classification Supervisor; and Captain J. Tyler, RRJ Head of Security. Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6), to which plaintiff has responded. Accordingly, the matter is now ripe for

disposition. Because the disposition of this motion requires a consideration of matters outside the pleadings, it is treated as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). For the reasons set forth here, defendants' motion to dismiss must be granted in part and denied in part.

### I.

■ At all times relevant to this action plaintiff, a Virginia inmate, was in segregated confinement at the RRJ.[1] According to plaintiff's confusing complaint, his constitutional rights were violated in several ways while incarcerated at the RRJ. Liberally construed,[2] it appears that his § 1983 claims are as follows:[3]

He was subjected to cruel and unusual punishment in violation of the Eighth Amendment when:

(1) he fell down a flight of stairs as a result of being placed in full restraints when he moved around the RRJ;

(2) he was denied adequate medical care in response to the injuries he sustained in the fall; and

(3) he was assaulted by a fellow inmate as a result of defendants' deliberate indifference to his safety.

### II.

Summary judgment is proper when the record conclusively shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard is satisfied when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

---

1. Plaintiff was placed in segregated confinement because he had escaped from the Petersburg Jail before his recapture and subsequent transfer to the RRJ.

2. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (complaints

filed by *pro se* plaintiffs must be construed liberally).

3. Apart from the federal § 1983 claim, plaintiff also presents a state gross negligence claim pursuant to the supplemental jurisdiction provisions of 28 U.S.C. § 1367.

*Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "mere scintilla" of evidence, however, is not enough. For the nonmoving party to avoid summary judgment, the evidence, when viewed in the light most favorable to that party, must be sufficient for a reasonable jury to find in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the parties' evidence is in dispute, the evidence of the nonmoving party is to be believed. *Id.* at 255, 106 S.Ct. 2505.

## III.

Because plaintiff alleges that he was subjected to cruel and unusual punishment in each of his claims, analysis properly begins with a statement of the applicable Eighth Amendment standard.

█ To state a *prima facie* claim of an Eighth Amendment violation for conditions of confinement, a two prong test must be met: plaintiff must show that (1) there was a serious deprivation of a basic human need, and (2) that prison officials were deliberately indifferent to the prison conditions. *Wilson v. Seiter,* 501 U.S. 294, 300, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); *Shakka v. Smith,* 71 F.3d 162, 165 (4th Cir.1995); *Strickler v. Waters,* 989 F.2d 1375 (4th Cir.1993); *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991); *Lopez v. Robinson,* 914 F.2d 486, 489–90 (4th Cir.1990); *Staples v. Virginia Dep't of Corrections,* 904 F.Supp. 487, 490–91 (E.D.Va.1995).

█ The first prong of this test involves an objective analysis requiring plaintiff to establish that the prison condition was a "sufficiently serious" deprivation of a basic human need. *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392; *See also Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Plaintiff must demonstrate both (1) that the risk from the prison conditions was so grave that it violated contemporary notions of decency and (2) that the prison condition resulted in serious or significant physical or emotional injury. *Strickler,* 989 F.2d at 1379–81; *Staples,* 904 F.Supp. at 490–91.

█ The second prong of the test involves a subjective analysis to determine whether plaintiff has established that a defendant had a "sufficiently culpable" state of mind. *Strickler,* 989 F.2d at 1379. In *Farmer,* the Supreme Court defined this state of mind requirement as meaning deliberate indifference. In essence, a defendant (i) must know of facts from which an inference can be drawn that "a substantial risk of serious harm" is posed to an inmate's health or safety, (ii) must actually draw that inference, and (iii) then disregard the risk posed to the inmate. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970.

This two-pronged test, applied here, compels dismissal of two of plaintiff's three claims. In the following discussion, each claim is separately addressed.

*First Claim:*

In plaintiff's first claim, he argues that he was subjected to cruel and unusual punishment when he was "allowed" to fall down the stairs at the RRJ. Plaintiff avers that on the morning of January 21, 1998, Officers Hartley and Hendrix placed him in shackles and cuffed his hands to a waist chain for the purpose of taking him to the RRJ gymnasium for recreation. According to plaintiff, he fell while the officers were escorting him to the gymnasium. Neither officer, he claims, was close enough to him to break his fall and he was unable to help himself because he was in full restraints. Finally, plaintiff alleges that he sustained significant injuries as a result of this fall.

Plaintiff's description of the facts underlying this first claim does not mention any of the three named defendants. Yet, plaintiff contends that each defendant caused his fall by allowing him to be transported in restraints. Plaintiff states that defendant Hodge is responsible for his fall

because he was made aware of the "over aggressive nature" of plaintiff's confinement and refused to remedy the situation. Similarly, plaintiff avers that defendant Tyler is responsible for his fall because she repeatedly refused to reclassify plaintiff to a less secure area. Put simply, plaintiff contends that Hodge and Tyler are responsible for his fall because they failed to move him to a less secure area where he would not have been transported in full restraints. Plaintiff further contends that defendant Reynolds' failure adequately to train RRJ officers concerning the transportation of shackled inmates led to his fall. Alternatively, he argues that Reynolds' directive to RRJ officers to place plaintiff in full restraints while he was transported makes him responsible for the fall.

■ As a threshold matter, a plaintiff seeking to establish § 1983 liability must affirmatively show that the "official charged acted personally in the deprivation of the plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir.1985) (citations and quotations omitted). *Accord Garraghty v. Commonwealth of Virginia*, 52 F.3d 1274, 1280 (4th Cir.1995); *Wheeler v. Gilmore*, 998 F.Supp. 666, 668 n. 5 (E.D.Va.1998). Moreover, plaintiff may not avail himself of the doctrine of respondeat superior, as this doctrine is inapplicable to § 1983 claims. *Wright*, 766 F.2d at 850. Thus, defendants must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against them.

■ Plaintiff's allegations concerning the involvement of defendants Hodge and Tyler are insufficient to establish § 1983 liability as to this first claim. In essence, plaintiff contends that both Hodge and Tyler are responsible for his fall because they determined that plaintiff should be

assigned to a restrictive housing assignment, which dictated that he would be transported in full restraints. According to plaintiff's logic, but for his housing assignment, for which he claims Hodge and Tyler are responsible, he would not have fallen. This alleged involvement of Hodge and Tyler is too attenuated and remote from the fall to state a § 1983 claim stemming from the fall. As such, Hodge and Tyler must be dismissed as defendants as to the first claim.

■ Even assuming, *arguendo*, the requisite involvement of Hodge and Tyler, the first claim against them and against Reynolds still fails for other, independent reasons. Specifically, neither prong of the Eighth Amendment test is met by the first claim. First, plaintiff has failed to show that placing him in restraints while he moved about the RRJ constituted a "sufficiently serious" deprivation of a basic human need in violation of contemporary notions of decency. *Rhodes*, 452 U.S. at 347, 101 S.Ct. 2392. *See also Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. Indeed, plaintiff has failed to show that placing him in restraints because he was considered a security risk was anything other than a reasonable security precaution committed to the broad discretion of prison officials.[4] Moreover, the record is devoid of any evidence indicating that the officers who were escorting plaintiff when he fell were in any way responsible for his fall. Put simply, plaintiff tripped and fell while walking in full restraints. This was an accident that at most was the result of negligence, perhaps even the plaintiff's negligence. In any event, it does not give rise to a constitutional tort.

■ Second, plaintiff has failed to show that defendants Hodge, Tyler, or Reynolds acted with deliberate indifference towards his needs. Thus, there is no allegation

4. The Supreme Court has mandated that courts accord broad deference to prison administrators' "adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

that any of the named defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm to plaintiff existed or that they drew that inference. Indeed, at most plaintiff can argue that Hodge and Tyler were negligent in their decisions regarding plaintiff's housing classification and that Reynolds was negligent in the instructions he provided to RRJ officers. Even assuming negligence, which is doubtful, plaintiff's claim against all three officers still fails as negligence is not a cognizable claim under Section 1983. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). As such, the first claim must be dismissed as it applies to defendant Reynolds and indeed as to all defendants.

*Second Claim:*

In his second claim, plaintiff argues that he endured cruel and unusual punishment when he was denied adequate medical care in response to the injuries he sustained from his fall. He states that after falling, he was taken to the John Randolph Medical Center (JRMC), where he was examined. There, he was given a discharge sheet that prescribed the treatment he was to be given when he returned to the RRJ. This sheet states simply that plaintiff should take: "(1) tylenol for discomfort; (2) rest [illegible words]; and (3) ice to swollen areas." Plaintiff avers that upon his return to the RRJ, he was denied the treatment prescribed by the JRMC. He contends the RRJ did not provide him with tylenol for his pain, as instructed in the JRMC's discharge sheet. According to plaintiff, the day following the fall, he could no longer tolerate his pain and because he had not been given the prescribed tylenol, he purchased extra strength tylenol at the RRJ.

5. Plaintiff was given this additional time in response to a grievance form he filed.

6. Although not disclosed in the record, this result may have been a consequence of the segregation order relating to plaintiff.

This claim fails on a number of grounds. First, and most significantly, plaintiff does not aver that any of the defendants were personally involved in the denial of any medical care or treatment. *See Wright,* 766 F.2d at 850. Second, plaintiff's medical needs were not sufficiently serious to come within the ambit of the Eighth Amendment's protection. *See Strickler,* 989 F.2d at 1379–81. And finally, there is no showing that defendants acted with deliberate indifference to his medical needs. *See Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. For all these reasons, the second claim must be dismissed in its entirety. *See Garraghty,* 52 F.3d at 1280; *Wright,* 766 F.2d at 850.

*Third Claim:*

In the third claim, plaintiff contends that he endured cruel and unusual punishment when he was assaulted by another inmate as a result of defendants' deliberate indifference to his safety. Plaintiff avers that on December 16, 1997, he was provided with two additional hours of recreation per day by RRJ officials.[5] It appears that the recreation time of other inmates was shortened as a result.[6] Several days later, according to plaintiff, inmates in housing unit 5–C–R began to threaten him with physical violence. He states that he immediately alerted the officers in his housing unit of these threats. Documentation reflects plaintiff's efforts to alert RRJ officials of his concerns for his safety, particularly after Sgt. Neuman moved plaintiff from a cell with a double door to a cell with a single door on January 14, 1998.[7] More specifically, the record shows that plaintiff complained not of a particularized threat from any specific inmate, but of a

7. The record reflects that plaintiff sent several letters to RRJ officials and filed several grievances at the RRJ concerning the threats he received and his objection to his housing classification between December 22, 1997 and February 22, 1998. Plaintiff specifies that all of his attempts to gain a new housing classification were ultimately unsuccessful.

general threat to his safety from all inmates in Unit 5–C–R.[8]

On February 27, 1998, while plaintiff was in the "pod" for his recreation, inmate McCray was inexplicably allowed out of his cell. Plaintiff specifies that "[i]nmate Jerome McCray some how walked from behind his double door cell in the maximum security POD," and entered the "pod" and assaulted him. Because he was recovering from his fall on the stairway at the time, plaintiff states that he was unable to defend himself from McCray. According to plaintiff, Officer Coleman, who was on duty at the time, left the pod and allowed plaintiff to be assaulted. Plaintiff contends that, as of the date he filed this complaint, he had not seen Coleman and had not been provided with the results of the RRJ's internal investigation.[9] Plaintiff purportedly sustained severe injuries in the assault.[10]

Plaintiff does not allege that defendants were directly responsible for inmate McCray's entry into the recreation area where plaintiff was attacked by McCray.

However, plaintiff avers that defendants are responsible for the assault because they were warned of the threats against him and acted with deliberate indifference to his safety by failing to move him to another area in the RRJ.[11] In support of his argument that defendants acted with deliberate indifference to his safety, plaintiff has submitted two letters written to him by inmate McCray in which McCray alleges that RRJ officers encouraged or allowed him to harm plaintiff.[12] McCray does not mention any of the named defendants in his letter.

For a plaintiff to satisfy the Eighth Amendment standard based on a claim that prison officials' failed to prevent harm to him from another inmate's violence, he must show: (1) that "he [was] incarcerated under conditions posing a substantial risk of serious harm;" and (2) that defendants were deliberately indifferent to those conditions. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970; *Taylor v. Freeman*, 34 F.3d 266, 270 (4th Cir.1994); *Moore v.*

8. In a February 21, 1998 letter to a magistrate, plaintiff stated that he had informed Officer Love of threats he received from two inmates, including inmate McCray. Yet, there is no allegation or indication that defendants were aware of either this letter or the grievance to which it refers.

9. Officer White denied plaintiff's request for a copy of the report concerning this incident due to security reasons.

10. These injuries allegedly included fractured and cracked ribs, a fractured scapula, and a contusion. In addition, plaintiff states that he continues to have pain, eye trouble, headaches, nightmares, flashbacks, and psychological damage.

11. Specifically, plaintiff holds defendant Hodge responsible for the assault because he failed to relocate plaintiff to another area in the RRJ after he was made aware plaintiff's safety concerns. Plaintiff holds defendant Reynolds responsible because he repeatedly denied his requests to be moved from a dangerous location. In addition, plaintiff avers defendant Tyler, who was responsible for classifying him under RRJ policies, refused to reclassify him, even though she was aware of

his situation. Plaintiff states that he believes defendants were retaliating against him for filing another civil action against defendant Reynolds and RRJ official Potter in January, 1998.

12. In the first letter, McCray stated that several RRJ officers, including Officer Coleman, allowed him out to "fuck you up." McCray further stated that "... all of them wanted somebody to fuck up you ... [Officer] Coleman after leting [sic] me out, came back in the pod, and watch[ed] and then left so I could hurt you." In his second letter, McCray apologized to plaintiff for the assault and stated:

[m]an these Officers kapt [sic] telling me, fuck up these things that you was saying about me with them. C.O. [Correctional Officer] Bell, told me that you wrote some letters on me, C.O. Coleman said a few things in-direct [sic] about you fucking up everybody one how out, and Lt. Furrin said that you think you so smart. By me being in so much trouble going through all these mental presser [sic], these officers set you up easly [sic] Its was actlly [sic] plan to get you hurt or killed. They was trying to get [illegible word] to hurt you.

*Winebrenner,* 927 F.2d 1312, 1316 (4th Cir. 1991). Prison officials will not be liable under the Eighth Amendment if they "knew of the underlying facts but believed (albeit unsoundly) that the risk ... was insubstantial or nonexistent" or if they "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer,* 511 U.S. at 844–45, 114 S.Ct. 1970. However, the Supreme Court has stated that:

> a prison official may not escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.

*Id.* at 843, 114 S.Ct. 1970.[13]

■ The current state of the record does not support a claim against the named defendants for the assault, as there is no showing of deliberate indifference. Even assuming defendants knew that plaintiff was at risk from other inmates, their response, namely to leave unchanged plaintiff's segregated status, is plainly reasonable in the circumstances. This is so because a central purpose of plaintiff's segregated status was to ensure that other inmates would have no contact with plaintiff. Moreover, it is not persuasive that defendants were deliberately indifferent to the risks posed to plaintiff by failing to move him out of his cell because segregation was a sufficient response to that risk. The cause of plaintiff's assault was the failure to enforce his segregation, not his incarceration in housing unit 5–C–R. Thus, as a matter of law, the named defendants cannot be said to have responded unreasonably to the risk, even assuming their knowledge of the risk, for had the segrega-

tion order been properly enforced, the assault would not have occurred. Accordingly, Claim 3 must be dismissed against all named defendants.

■ But the analysis cannot end here, for the fact is the segregation order was not enforced; inmate McCray was somehow allowed access to plaintiff. It is unclear from the record how this occurred, who allowed it, and why. Yet, it must have occurred by design, deliberate indifference, or negligence. If it occurred negligently, there is no constitutional tort. *See Daniels,* 474 U.S. at 327, 106 S.Ct. 662. If it occurred by someone's deliberate indifference or worse, then plaintiff has a constitutional claim. *See Farmer,* 511 U.S. at 834, 114 S.Ct. 1970; *Taylor,* 34 F.3d at 270; *Moore,* 927 F.2d at 1316.

There is currently some record evidence of deliberate indifference or indeed worse, namely the allegations presented in inmate McCray's letters to the effect that RRJ officers invited and incited McCray to assault plaintiff and that Officer Coleman left the recreation area and failed to intervene while McCray assaulted plaintiff. Because such evidence of deliberate indifference exists, plaintiff must be given an opportunity to explore this matter in discovery. And, given the complexities such discovery is likely to entail, counsel will be appointed to represent plaintiff in all respects, including pursuing the requisite discovery and, if appropriate, filing an amended complaint with respect to Claim 3. *See Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir.1984) (holding that the appointment of counsel is warranted only in cases where "exceptional circumstances" exist either because the case is particularly complex or because a litigant is unable to represent himself adequately).

---

**13.** As an example, the *Farmer* Court stated that:

> [i]f, for example, prison officials were aware that inmate rape was so common and uncontrolled that some potential victims dared not sleep, but instead ... would leave their beds and spend the night cling-

ing to the bars nearest the guards station, ... it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack them. *Id.* at 843–44, 114 S.Ct. 1970 (citations and quotations omitted).

Thus, each of the three named defendants will be dismissed from Claim 3. Because plaintiff's failure to name the correct defendants should not be fatal to his claim, the Court will substitute John Doe for the named defendants. *See Gordon v. Leeke,* 574 F.2d 1147, 1152 (4th Cir.1978) (where a *pro se* litigant has alleged "a cause of action which may be meritorious against a person or persons unknown, the district court should afford him a reasonable opportunity to determine the correct person or persons against whom the claim is asserted," permit him to amend the pleadings, and, where the *pro se* party has a colorable claim but lacks the capacity to present it, appoint counsel to assist him); *Coleman v. Peyton,* 340 F.2d 603, 604 (4th Cir.1965) (where *pro se* plaintiff makes vague allegations concerning a potentially viable claim, district court should either afford him an opportunity to particularize his complaint or appoint counsel to assist him in amending his complaint). Plaintiff, with the assistance of counsel, will be given an opportunity to conduct discovery and to file an amended complaint should discovery disclose the existence of a good faith deliberate indifference claim and the identity of the appropriate defendants.[14]

## IV.

Based on the foregoing, defendants' motion to dismiss will be granted in part and denied in part. An appropriate Order shall issue.

---

**14.** In the event that Claim 3 is pursued, plaintiff may also include in his amended complaint state law claims, if appropriate. *See* 28 U.S.C. § 1367.